**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 7 2015

CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on May 7, 2015

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 90281-0 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| WILLIAM MICHAEL REIS, | ) | |
| | ) | Filed    MAY 0 7 2015 |
| Petitioner. | ) | |
| _____ | ) | |

WIGGINS, J.—William Reis was charged with manufacturing a controlled substance after a search of his home produced evidence of a marijuana grow operation. Reis moved to suppress the results of the search on the ground that the search warrant was invalid, arguing that the 2011 amendments to the Washington State Medical Use of Cannabis Act (MUCA), chapter 69.51A RCW, decriminalized the possession of cannabis for medical use. The trial court denied Reis's motion to suppress, and the Court of Appeals granted discretionary review and affirmed.

The 2011 amendments to RCW 69.51A.040 provide in relevant part that the "medical use of cannabis *in accordance with the terms and conditions of this chapter* does not constitute a crime . . . ." (Emphasis added.) One of these "terms and conditions" is that a medical user must be registered with a registry established by

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

section 901 of the 2011 MUCA amendments. RCW 69.51A.040(2), (3). But the governor vetoed section 901, and no registry currently exists. It is thus impossible to register "in accordance with the terms and conditions of this chapter . . ." after the governor's veto.

We hold that the plain language of MUCA, supported by the context in which the language appears, the overall statutory scheme, and the legislative intent as captured by the governor's veto message, does not support the conclusion that the medical use of marijuana is not a crime. Therefore, we affirm the Court of Appeals and remand for trial.

## FACTS

Detective Thomas Calabrese received an anonymous tip in 2012 from an individual living in the Shorewood area of Burien, informing him that a man named "William" was actively growing marijuana in a house in that neighborhood. The informant, who feared retaliation by Reis, declined to provide any additional information. Calabrese later drove through Shorewood and was able to observe six marijuana plants growing on the back porch of a home. He then observed an individual tending those plants. He noted the address and left.

Detective Calabrese then asked and was granted permission to use a neighbor's yard to observe the porch. From this vantage point, Calabrese was able to observe the plants on the porch. He also heard a distinct humming sound coming from the northwest side of the target home and observed black plastic covering the daylight basement window. Calabrese also noticed condensation on this window.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Leaving his vantage point, Calabrese drove past the target house and noted the license plate number on the vehicle parked in front of the house. A directory search of the plate indicated that the vehicle belonged to William Reis. Calabrese began checking that name and discovered that Reis had been arrested in 2005 for domestic violence. During that arrest, officers discovered a large marijuana grow operation in the basement, as well as a rifle and $18,000 cash hidden in the attic. Additional searches of Reis's financial records in 2005 connected him to a large marijuana grow operation in California. Detective Calabrese also learned that Reis had been arrested in 2011 for possession of 1.3 grams of marijuana.

Calabrese obtained Reis's 2005 booking photo and found that it matched the individual he observed tending the marijuana plants on the porch. He then returned to Shorewood to interview neighbors in an effort to determine whether Reis was selling or distributing marijuana. However, none of Reis's neighbors would talk to him. They each asserted that they were afraid of Reis and that they did not want Reis to retaliate against them. One of the neighbors even informed Calabrese that they had purchased a firearm specifically to protect themselves from Reis.

Detective Calabrese put all of this information in an affidavit of probable cause to support a search warrant of Reis's home. Judge Eide granted a search warrant, finding probable cause to believe that Reis was violating Washington's Uniform Controlled Substances Act, chapter 69.50 RCW.[1] A search of Reis's home pursuant

---

[1] Calabrese's affidavit did not allege a violation of federal law, and the record does not suggest the he was pursuing a violation of federal law. Therefore, the sole question on appeal is whether Detective Calabrese had probable cause of a violation of state law. *See United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948 (9th. Cir. 2009) (requiring state

to the search warrant revealed plants, scales, ledgers, sales receipts, and tools indicative of a marijuana grow operation. The search also revealed 37 plants and 210.72 ounces of cannabis.[2]

The State charged Reis with violating chapter 69.50 RCW, the Uniform Controlled Substances Act. Reis moved to suppress the evidence found in his home, asserting that the search warrant was not supported by probable cause. The trial court denied Reis's motion to suppress. The trial court granted Reis's motion for expedited discretionary review in the Court of Appeals and certified this issue for immediate review under RAP 2.3(b)(4)[3] before Reis's scheduled trial date. The Court of Appeals, Division One, granted discretionary review and held in a published opinion that the authorized use of medical marijuana under RCW 69.51A.040 does not preclude an officer from searching; compliant use under the statute is an affirmative defense that does not negate probable cause required for a search warrant. *State v. Reis*, 180 Wn. App. 438, 322 P.3d 1238 (2014). We granted review and now affirm.

---

law enforcement officers to indicate pursuits of violations of federal law in their affidavits, or to seek a search warrant from a federal magistrate, to support a finding of probable cause for the violation of a federal crime).

[2] The "terms and conditions" of RCW 69.51A.040(1)(a)(i) that render the medical use of marijuana legal require that a qualifying patient or designated provider possess no more than 15 marijuana plants and no more than 24 ounces of useable cannabis.

[3] RAP 2.4(b)(4) provides for discretionary review when "[t]he superior court has certified . . . that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

This case asks us to determine whether RCW 69.51A.040, as enacted following Governor Gregoire's 2011 veto, decriminalizes the medical use of marijuana.[4] In answering this question, we apply well established principles of statutory interpretation to chapter 69.51A RCW. These principles lead to the conclusion that the medical use of marijuana is not lawful because compliance with RCW 69.51A.040 is currently impossible. Further, we reject Reis's arguments regarding the effect of the governor's veto; nothing about the veto process changes our analysis of the enacted statute.

I.    Standard of Review

We review questions of statutory interpretation de novo. *Ass'n of Wash. Spirits & Wine Distrib. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015). The court discerns legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

II.   Overview of Washington's Medical Marijuana Laws

Marijuana is generally a schedule I unlawful controlled substance, the possession or cultivation of which is prohibited.[5] RCW 69.50.204(c)(22); RCW

---

[4] Reis concedes the search was valid if we conclude that chapter 69.51A RCW provides only an affirmative defense. This opinion does not discuss the propriety of the search because we hold that the statute provides qualifying patients and designated providers with only an affirmative defense.

[5] Initiative Measure 502, approved in November 2012, legalized the possession of small amounts of marijuana. The initiative was not in effect when this search warrant issued, and

5

69.50.401(1). It has maintained this classification by the Washington State Legislature since 1971. RCW 69.50.204(c)(22). Since 1971, the possession, manufacture, and distribution of marijuana has been generally prohibited. See RCW 69.50.401-.455. However, in 1998, the legislature enacted the MUCA, chapter 69.51A RCW, creating an exception for the medicinal use of marijuana. This exception created an affirmative defense for qualifying patients and designated caregivers who could establish that they complied with the requirements of that chapter. Former RCW 69.51A.040(1) (1998).

In 2011, the legislature amended MUCA by adopting Engrossed Second Substitute Senate Bill (E2SSB) 5073. The stated purpose of these amendments, as asserted in section 101 (vetoed), was to ensure that

> (a)   Qualifying patients and designated providers complying with the terms of this act and registering with the department of health will no longer be subject to arrest or prosecution, other criminal sanctions, or civil consequences based solely on their medical use of cannabis;
> (b)   Qualifying patients will have access to an adequate, safe, consistent, and secure source of medical quality cannabis; and
> (c)   Health care professionals may authorize the medical use of cannabis in the manner provided by this act without fear of state criminal or civil sanctions.

E2SSB 5073, § 101 (as passed by the legislature) (vetoed); *see* LAWS OF 2011, ch. 181, § 101. In order to achieve these goals, the legislature created a two-tiered system of medical exceptions to the general prohibitions on possessing or cultivating marijuana. E2SSB 5073 §§ 401, 402, 406 (codified as RCW 69.51A.040, .043(1), (2)).

---

the parties agree that the initiative has no bearing on this case. We do not consider or analyze the initiative in this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Section 901 of the bill directed the state Department of Health and the state Department of Agriculture to "adopt rules for the creation, implementation, maintenance, and timely upgrading of a secure and confidential registration system." E2SSB 5073, § 901(1). Any established registry was required to allow

> (a)   A peace officer to verify at any time whether a health care professional has registered a person as either a qualifying patient or a designated provider; and
> (b)   A peace officer to verify at any time whether a person, location, or business is licensed . . . .

E2SSB 5073, § 901 (as passed by the legislature) (vetoed); *see* LAWS OF 2011, ch. 181, § 901. Registration of qualifying patients and designated providers was optional. Registration would place the burden on law enforcement officials to establish that the terms and conditions of the medical marijuana exceptions were not being satisfied. E2SSB 5073, § 901(4) (vetoed); *see* RCW 69.51A.040. Once established, the registry would provide registered users heightened protection from arrest, prosecution, criminal sanctions, and civil consequences based solely on their medical use of marijuana.  E2SSB 5073, § 102(2)(a) (codified as RCW 69.51A.005(2)). Otherwise compliant but nonregistered, users were entitled to raise an affirmative defense. E2SSB 5073, § 402 (codified as RCW 69.51A.043).

In April 2011, the United States Attorneys for the Eastern and Western Districts of Washington wrote an advisory letter to Governor Gregoire regarding Laws of 2011, chapter 181. This letter explained the Department of Justice's position on the bill:

> "The Washington legislative proposals will create a licensing scheme that permits large-scale marijuana cultivation and distribution. This would authorize conduct contrary to federal law and thus, would undermine the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances. . . . In addition, state employees who conducted activities mandated by the Washington

7

legislative proposals would not be immune from liability under the CSA [Controlled Substances Act, 21 U.S.C. ch. 13]. Potential actions the Department could consider include injunctive actions to prevent cultivation and distribution of marijuana and other associated violations of the CSA; civil fines; criminal prosecution; and the forfeiture of any property used to facilitate a violation of the CSA."

*Cannabis Action Coal. v. City of Kent*, 180 Wn. App. 455, 464, 322 P.3d 1246 (first alteration in original) (footnote omitted), *review granted*, 182 Wn.2d 1022, 336 P.3d 1165 (2014). Following receipt of this letter, the governor vetoed 36 sections that would have established and monitored a state licensed medical marijuana registry, including the legislature's statement of intent in section 101. *See* LAWS OF 2011, ch. 181, at 1376 (governor's veto message). No registry currently exists. However, the governor did not veto sections 401, 402, or 406, reasoning that the latter sections were still meaningful because they "establish affirmative defenses" and "govern those who have <u>not</u> registered." *Id.* Sections 402 and 406 (codified as RCW 69.51A.043(1) and (2), respectively) establish affirmative defenses for patients who have not registered. Section 401 (codified as RCW 69.51A.040) identifies the requirements for qualifying patients to receive heightened protections, beyond the ability to establish an affirmative defense. As enacted, RCW 69.51A.040 provides heightened protection for qualifying patients and designated providers who, among other things, register with the Department of Health.

III.  Statutory Interpretation

RCW 69.51A.040, as passed, does not decriminalize the medical use of marijuana. Instead, the plain language of the statute establishes a limited exception to the general prohibition against marijuana that existed at the time that the search warrant in this case issued. This interpretation is supported by the context in which

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the statute appears, the statute's placement within the statutory scheme, and the governor's veto message accompanying E2SSB 5073. *See* LAWS OF 2011, ch. 181, at 1374-76. The legislature may have intended to create heightened protections for qualifying patients who registered. However, because registration is currently impossible, the statute provides qualifying patients with only an affirmative defense until the legislature is able to establish a registry. Therefore, we reject Reis's argument and affirm the Court of Appeals.

A. *Plain language of the statute*

We begin with the plain language of the statute. As enacted, RCW 69.51A.040 reads in relevant part:

> The medical use of cannabis in accordance with the terms and conditions of this chapter does not constitute a crime and a qualifying patient or designated provider in compliance with the terms and conditions of this chapter may not be arrested, prosecuted, or subject to other criminal sanctions or civil consequences . . . if:
>
> . . . .
>
> (2) The qualifying patient or designated provider presents his or her proof of registration with the department of health, to any peace officer who questions the patient or provider . . . ;
>
> (3) The qualifying patient or designated provider keeps a copy of his or her proof of registration with the registry established in section 901 of this act and the qualifying patient or designated provider's contact information posted prominently next to any cannabis plants, cannabis products, or useable cannabis located at his or her residence;
>
> . . . .
>
> (6) The investigating peace officer has not observed evidence of any of the circumstances identified in section 901(4) of this act.

The language of this statute is clear and unambiguous: the medical use of cannabis is not a crime if each of the terms and conditions is complied with by either

qualifying patients or designated providers. The terms and conditions are provided for in RCW 69.51A.040, and the terms "qualifying patient" and "designated provider" are defined. *See* RCW 69.51A.010. Because the terms are defined within the statute, we need not look outside the statute to determine their meaning. *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991) ("'Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning.'" (quoting *State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988))). It follows that one who does not satisfy the terms and conditions, or who is not a qualifying patient or a designated provider, is not entitled to the enumerated protections in this statute.

### B. Chapter 69.51A RCW creates an affirmative defense to the general prohibition on marijuana

The context of the statute supports our plain language interpretation. We interpret laws dealing with the same or similar issues by considering them together. *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 423, 259 P.3d 190 (2011). This is particularly relevant when analyzing exceptions—we do not analyze individual subsections in isolation from the other sections of the statute when doing so would undermine the overall statutory purpose. *In re Pers. Restraint of Adams*, 178 Wn.2d 417, 424, 309 P.3d 451 (2013).

The Controlled Substances Act makes it a crime to possess, manufacture, or distribute marijuana in Washington. *See* RCW 69.50.401-.455. The medical use of marijuana is an exception to this general prohibition, RCW 69.51A.020. The protections available through this exception vary based on a qualifying patient's or designated provider's adherence to the terms and conditions governing the exception. RCW 69.51A.040. In this context, the amended MUCA clearly establishes a tiered

10

system of protections for compliant, qualifying users of medical marijuana: RCW 69.51A.040 and a series of affirmative defenses for qualifying patients failing the requirements of RCW 69.51A.040. RCW 69.51A.043, .045, .047.

RCW 69.51A.040 decriminalizes cannabis used for medical purposes in accordance with the statutory scheme. This statute affords the highest level of protections for qualifying patients and designated providers who use cannabis "in accordance with the terms and conditions of this chapter." RCW 69.51A.040. There are six required "terms and conditions" contained within RCW 69.51A.040. Subsection (1) places limits on the quantity of cannabis that a qualifying patient or designated provider may possess. Subsections (2) and (3) require registration with the Department of Health—now impossible in light of the governor's veto—and require that the patient keep their registration within their home and present it to inquiring investigating officers. Subsections (4), (5), and (6) require that the investigating officer not possess evidence that the qualifying patient or designated provider is converting marijuana for their own use or benefit, or otherwise violating distribution requirements or registration requirements. If a qualifying patient or designated provider complies with all of these requirements, including registration, the use of marijuana "does not constitute a crime." *Id.*

RCW 69.51A.043 provides an affirmative defense for the medical use of cannabis. The legislature made the distinction between section .040 and section .043 rest on whether the user was registered in the state registry. RCW 69.51A.040 (expressly requiring registration and display of registration); RCW 69.51A.043(2) ("A qualifying patient or designated provider who is not registered with the registry . . .

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

may assert an affirmative defense to charges of violations of state law relating to cannabis through proof at trial, by a preponderance of the evidence, that he or she otherwise meets the requirements of RCW 69.51A.040.").

Reis argues that this language is ambiguous because "RCW 69.51A.040 decriminalizes the same activity which RCW 69.51A.043 affords an affirmative defense." But nothing in the text of the statute enacted following the governor's veto supports this interpretation. Even though there is no registry, we cannot simply read that requirement out of the statute. *See G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) ("'[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous'" (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003))). By its language, RCW 69.51A.040 decriminalizes activities for individuals who have, amongst other things, registered with the Department of Health, while RCW 69.51A.043 provides an affirmative defense for those who have not registered.

An affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so. *State v. Votava*, 149 Wn.2d 178, 187-88, 66 P.3d 1050 (2003). Reis's reading would render RCW 69.51A.043 superfluous—there is no need for an affirmative defense to provide an excuse for conduct that is not unlawful. *See State v. Kurtz*, 178 Wn.2d 466, 478, 309 P.3d 472 (2013) (explaining that an affirmative defense is necessary only when one's conduct falls outside the specific conduct protected under RCW 69.51A.040). Thus, Reis's argument turns the plain language of the statute on its head: the affirmative defense provisions are essential protections

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

for qualifying patients and designated providers because no one can enjoy the heightened protections of RCW 69.51A.040 in the absence of a registry.

### C. *Legislative Intent*

For the reasons discussed above we hold that chapter 69.51A RCW provides medical marijuana patients with only an affirmative defense. Reis responds to these plain language arguments by asserting that RCW 69.51A.040 plainly reads, "[T]he medical use of cannabis . . . does not constitute a crime," citing to our opinion in *Kurtz*, 178 Wn.2d at 478. He also argues that the codified legislative intent of RCW 69.51A.005 plainly articulates the purpose of the amendment and that our reading should give effect to this purpose.

*Kurtz* addressed whether the 2011 amendments to MUCA abrogated the common law medical necessity defense. The court, in holding that the amendments did not abrogate the common law medical necessity defense, stated that "the legislature amended the Act making *qualifying* marijuana use a legal use, not simply an affirmative defense." *Id.* at 476 (emphasis added). Later in that paragraph, the court repeated that "[t]he 2011 amendment legalizing *qualifying* marijuana use strongly suggests that the Act was not intended to abrogate or supplant the common law [medical] necessity defense." *Id.* (emphasis added). Rather than interpret the statute, these statements mirror the language in RCW 69.51A.040 that "the medical use of cannabis *in accordance with the terms and conditions of this chapter* does not constitute a crime." (Emphasis added.) Because registration is a requirement for qualifying marijuana use under RCW 69.51A.040, *Kurtz* does not support Reis's argument.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Reis also argues that the legislature intended to decriminalize the medical use of marijuana by giving patients heightened protections from searches and arrest. This may be true; however, the legislative intent *codified as* RCW 69.51A.005[6] does not trump the plain language of the statute to create an ambiguity. Declarations of intent are not controlling; instead, they serve "only as an important guide in determining the intended effect of the operative sections." *Kilian v. Atkinson*, 147 Wn.2d 16, 23, 50 P.3d 638 (2002). This is true even when the codified intent speaks directly to the enacted statute. Here, the governor's veto struck 36 of the 58 original sections; the legislature's statement of intent speaks to a statute that was never enacted.

Though the legislature's initial intent in passing this statute was never realized, Governor Gregoire articulated her intent for the surviving portions of the amendments in her veto message. *See* LAWS OF 2011, ch. 181, at 1374-76 (governor's veto message). Our "'fundamental objective in construing a statute is to ascertain and carry out the legislature's intent,'" *Lake v. Woodcreek Homeowner's Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151

---

[6] RCW 69.51A.005(2) reads as follows:

Therefore, the legislature intends that:

(a) Qualifying patients with terminal or debilitating medical conditions who, in the judgment of their health care professionals, may benefit from the medical use of cannabis, shall not be arrested, prosecuted, or subject to other criminal sanctions or civil consequences under state law based solely on their medical use of cannabis, notwithstanding any other provision of law;

(b) Persons who act as designated providers to such patients shall also not be arrested, prosecuted, or subject to other criminal sanctions or civil consequences under state law, notwithstanding any other provision of law, based solely on their assisting with the medical use of cannabis . . . .

Wn.2d 359, 367, 89 P.3d 217 (2004)), and "[i]n approving or disapproving legislation, the Governor acts in a legislative capacity and as part of the legislative branch of government." *Hallin v. Trent*, 94 Wn.2d 671, 677, 619 P.2d 357 (1980) (quoting *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 506, 104 P.2d 478 (1940) ("When referring to what the legislature intended, we must not forget that the governor . . . [is] acting in a legislative capacity, and we cannot therefore consider the intent of the house and the senate apart from the intent of the governor.")). Here, the governor's veto message is the only statement of legislative intent speaking to the removal of the registry from the bill as enacted. The veto message conveys the governor's recognition that the bill will not provide heightened arrest and seizure protection and that qualifying patients and designated providers will instead be able to assert an affirmative defense. LAWS OF 2011, ch. 181, at 1374-76 (governor's veto message).

Governor Gregoire explained that she decided to veto the registry because she was "open to legislation that establishes a secure and confidential registration system to provide arrest and seizure protections under state law to qualifying patients . . . ." *Id.* at 1376. This strongly suggests that the governor recognized that this bill would not provide those protections. She then announced that she would veto sections 901 and 902, stating that "[w]ithout a registry, these sections are not meaningful." *Id.* However, the governor declined to veto sections 402 and 406; these sections provide an affirmative defense for qualifying patients and designated providers who are not registered. *Id.* The governor explicitly recognized that these sections remain meaningful without a registry "[b]ecause these sections govern those who have <u>not</u> registered." *Id.* Thus, the legislative intent does not support Reis's argument.

15

Applying each of these well-established principles of statutory interpretation leads to the conclusion that RCW 69.51A.040 does not decriminalize the medical use of cannabis. It is currently impossible to comply with each of the requirements in RCW 69.51A.040 because a registry does not currently exist. Following the governor's veto, chapter 69.51A RCW does not provide for the heightened search and arrest protections that the legislature may have intended. *See* RCW 69.51A.005(2); E2SSB 5073, § 101 (vetoed). Instead, qualifying patients and designated providers are provided with an affirmative defense and RCW 69.51A.040 establishes the elements for raising that defense. The possibility remains that the legislature may yet amend the statute to create a registry; this does not suggest that the current statute has multiple reasonable interpretations. It also does not suggest that the legislature intended to decriminalize marijuana without the benefits of a registry.

### D. We may not modify the plain and unambiguous statutory language

Despite Reis's arguments, we do not have the authority to rewrite the statute to provide the enhanced protections that the legislature may have intended had it anticipated the governor's veto. The court is not permitted to "speculate as to what the legislature intended, had it foreseen the veto." *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 509, 104 P.2d 478 (1940). Instead, we are left with the statute "'to be considered now just as it would have been if the vetoed provisions had never been written into the bill at any stage of the proceedings.'" *Id.* at 506 (quoting *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 408, 25 P.2d 91 (1933)). Indeed, this situation is analogous to a legislative omission, a situation in which we have long recognized that

> we do not have the power to read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent

16

omission. . . . [I]t would be a clear judicial usurpation of legislative power for us to correct that legislative oversight.

*State v. Martin*, 94 Wn.2d 1, 8, 614 P.2d 164 (1980) (citations omitted). It is not this court's job to remove words from statutes or to create judicial fixes, even if we think the legislature would approve. Statutes that frustrate the purpose of others, though perhaps unintentionally, are "purely a legislative problem." *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 578, 399 P.2d 8 (1965). Until the legislature amends the statute or creates a registry, the MUCA provides qualifying patients with only an affirmative defense.

IV.    The Veto Does Not Undermine Our Analysis of the Enacted Statute

This statutory analysis has interpreted the relative statutes as if the legislature had written the statutes as they were enacted following the governor's veto. Nothing about the governor's veto changes the way we interpret these statutes.

The governor's veto power, broadly construed since the territorial days, has evolved over time. *See generally Wash. State Legislature v. Lowry*, 131 Wn.2d 309, 315-16, 931 P.2d 885 (1997). Initially, the governor's veto extended to full bills, sections of bills, and items in bills. WASH. CONST. 1889, art. III, § 12. This power was limited by the 62nd amendment in 1974. *Lowry*, 131 Wn.2d at 316. Today, the Washington Constitution confers on the governor general veto authority over legislation and a different "line item" veto power over "appropriation items":

> If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items . . . *Provided*, That he may not object to less than an entire section, except that if the section contain one or more appropriation items he may object to any such appropriation item or items.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

WASH. CONST. art. III, § 12 (amend. 62). Thus, under the general veto power exercised in this case, the governor may veto a whole bill or a section of a bill but cannot veto individual items or lines in bills. *Id.*

Governor Gregoire lawfully vetoed 36 of the 58 sections of chapter 181. LAWS OF 2011, ch. 181, at 1376 (governor's veto message). She vetoed section 901 which would have established and monitored a state licensed medical marijuana registry, but did not veto references to section 901, in the amended MUCA. As a result of the governor's choice not to veto references to the registry, these references remain in the bill, codified as chapter 69.51A RCW. Therefore, we must analyze the effect that Governor Gregoire's veto has on the remaining references to the vetoed sections. Specifically, we must address the references to a state registry.

The governor's veto completely removes the vetoed material from the legislation. *Hallin*, 94 Wn.2d at 677. The act is "'to be considered now just as it would have been if the vetoed provisions had never been written into the bill at any stage of the proceedings.'" *Shelton Hotel Co.*, 4 Wn.2d at 506 (quoting *State ex rel. Stiner*, 174 Wash. at 408). Reis relies on these cases, as well as *Washington Federation of State Employees v. State*, 101 Wn.2d 536, 545, 682 P.2d 869 (1984), to argue that we must disregard not only the vetoed provisions themselves but also all remaining references to the vetoed sections. But this case differs from *Hallin, Shelton Hotel Co.*, and *Washington Federation* in one major way: in those cases the disregarded language was actually vetoed; in this case, the references to the registry were never vetoed from RCW 69.51A.040. Since the references to section 901 were not vetoed from

18

RCW 69.51A.040, we cannot disregard them. Accordingly, we reject Reis's argument that the medicinal use of cannabis is no longer a crime.

Contrary to Reis's assertions, *Washington Federation* does not require this court to strike references to vetoed legislation. *Washington Federation* concerned a challenge to Governor Spellman's veto of Substitute House Bill 1226, 47th Leg., 1st Ex. Sess. ch. 53, at 511 (Wash. 1982). 101 Wn.2d at 538. The veto explicitly removed section 30 and all references to that section. *Id.* The petitioner in *Washington Federation* argued that the removal of the related items was a line item veto in violation of article III, section 12 of the Washington State Constitution. *Id.* In rejecting that argument, this court held:

> The veto of Governor Spellman was of an entire section and was valid. The deleted references to section 30 were incidentally vetoed purely as a ministerial act. If not deleted, the Code Reviser, pursuant to RCW 1.08.015(2)(m), would have taken out such "manifestly obsolete" references.

*Id.* at 544. Thus, *Washington Federation* permitted the incidental veto by the executive branch of individual line items, despite the general prohibitions of Washington Constitution article III, section 12 (amend. 62). *Id.* It does not address whether a court must evaluate and disregard individual items of legislation that reference a vetoed section when those items survived the governor's veto. We decline to read these requirements out of the statute when they were not actually vetoed by the governor.

Governor Gregoire's veto message carefully and deliberately distinguishes between references that "are not meaningful" and those that "remain meaningful" following her veto of the registry. But even if we believed that the governor overlooked these particular references, we do not have the power to edit the language of the

19

enacted statute. In exercising the veto power, the governor is acting in a legislative capacity. *Shelton Hotel Co.*, 4 Wn.2d at 506. This court does not have the authority to read language out of a statute, even when we believe that the statute contains errors or inadvertent omissions. *Cf. Martin,* 94 Wn.2d at 8 (court does not have the power to "read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent omission"). The governor's veto did not eliminate the statutory language requiring registration in RCW 69.51A.040, and we cannot eliminate that language ourselves. We instead must limit our interpretation to the enacted statute; we therefore regard "the excised material . . . as though it had never been written by the legislature." *Hallin*, 94 Wn.2d at 678.

V.    Lawfulness of the Search Warrant

We hold that the search was valid because the plain language of the statute and the legislative intent as expressed in the governor's veto message lead to the conclusion that a user or possessor of cannabis may raise only an affirmative defense under MUCA. Reis concedes that the possibility of proving the affirmative defense does not undermine probable cause for a search warrant. *State v. Fry*, 168 Wn.2d 1, 6, 228 P.3d 1 (2010).

CONCLUSION

We affirm the Court of Appeals and remand for trial consistent with this opinion.

Wiggins, J.

WE CONCUR.

Madsen, C.J.                    Stephens, J.

                                González, J.

                                Gordon McCloud, J.

Fairhurst, J.

21