# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58336-4-II |
| Respondent, | |
| v. | |
| TRANG MY LE, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J—In December 2017, law enforcement in Thurston County began investigating a possible illegal marijuana grow operation involving four properties. After investigating and surveilling the properties, law enforcement applied for search warrants.[1] The warrant affidavit described the investigation and outlined numerous facts to establish probable cause. A superior court judge issued the warrants. Officers searched the four properties pursuant to the warrant and discovered over 1,000 marijuana plants, in addition to tools, equipment, and supplies used to grow and package marijuana. Officers arrested Trang My Le and her codefendants. The State charged Le with unlawful possession of a controlled substance with intent to deliver and unlawful manufacture of a controlled substance. Le moved to suppress evidence obtained during the search, arguing that the affidavit failed to establish probable cause. She also

---

[1] In applying for search warrants, law enforcement used one affidavit. Separate, individual search warrants were used for each of the four properties involved, but the record only includes a copy of the search warrant for Le and a search warrant for one of the properties (the Capitol Ridge Lane property).

argued that the affidavit did not sufficiently support probable cause because it did not indicate that officers checked the legal status of the marijuana grow operation. The trial court denied Le's motions to suppress. A jury found Le guilty of both counts. Le appeals.

Le argues that the warrant did not establish probable cause at any of the four properties. In the alternative, she argues that if probable cause existed as to two of the four properties (where the odor of marijuana was detected), it did not extend to the other two properties. Le also argues that law enforcement was required to check whether the grow operations were legal and registered with the State and include that information in the affidavit. The State responds that the affidavit established probable cause to search all four properties. The State argues that law enforcement officers were not required to check the legal status of the marijuana grow operation in order to establish probable cause and obtain a search warrant. We hold that when viewed together, the facts in the affidavit were sufficient to establish probable cause to search all four properties, regardless of the fact that the odor of marijuana was only detected at two of the properties. Further, we hold that the search warrant was valid even though the affidavit did not indicate whether the marijuana grow operations were legal and registered with the state. We affirm.

FACTS

I. INVESTIGATION & SEARCH WARRANT APPLICATION

In December 2017, the Thurston County Narcotics Task Force began investigating a possible marijuana grow operation in the county.[2] The investigation focused on four properties,

---

[2] When the events of this case took place, in 2017 and 2018, the relevant statutes used the term "marijuana." *See, e.g.*, former RCW 69.50.401 (2015); former RCW 69.51A.040 (2015). These statutes were later amended to use the term "cannabis." *See, e.g.*, RCW 69.50.401; RCW 69.51A.040. We use "marijuana" because that was the term in effect during the facts of this case.

located on the following streets: Old Highway 99, 101st Ave, Capitol Ridge Lane, and Downey Lane. The investigation began when the task force received an anonymous tip regarding the Old Highway 99 location, and began surveilling that property. While surveilling the Old Highway 99 property, officers soon became aware of the connection between that property and the 101st Ave property, after following vehicles between the two properties. During the course of surveilling these two properties, officers also became aware of significant vehicle movements between these two properties and the two additional properties—located on Capitol Ridge Lane and Downey Lane, respectively.

In March 2018, Special Agent Terry Bach submitted an affidavit and application for a search warrant to search the four properties, multiple vehicles, and the persons of Le and her codefendants. The investigation initially focused on Le, Trung Dang, Ken Lu, and David Le.[3] During the investigation, officers discovered the involvement of Mathew Tran. The State ultimately charged all five individuals. After the warrant application was approved, officers executed a search on the four properties. Le was detained at the residence located on the 101st Ave property.

A. Affidavit & Facts Relating to Probable Cause

In his affidavit and application for a search warrant, Special Agent Bach outlined numerous facts to establish probable cause. Among other facts, the affidavit described vehicle movements between the four properties and travel patterns consistent with marijuana grow operations; the detection of the odor of fresh marijuana at two of the four properties; significant and above average power consumption; utility accounts registered under names of individuals not living at the

_____

[3] For clarity, this opinion will refer to David Le by his full name.

properties (consistent with obfuscation efforts to avoid detection); and no reported income for the four primary individuals involved for the three years leading up to the search, despite the fact that during that time, these individuals purchased multiple homes, paid expensive power bills, made home improvements, and drove six vehicles, some of which are considered to be luxury brands. Additionally, Special Agent Bach noted in the affidavit that detectives observed the following: loud humming sounds, consistent with the equipment needed to operate marijuana grow operations; transportation of supplies commonly used for growing marijuana; and frequent traffic of individuals not believed to be living at the residences.

First, the affidavit details vehicle movement "consistent with individuals involved in the manufacture of marijuana." Clerk's Paper's (CP) at 83. Officers began their investigation by surveilling the Old Highway 99 property, based on the anonymous tip. During the course of that surveillance, officers observed five vehicles parked at the property at various times. Bach determined the registered owners of each vehicle and their addresses. Three of the five vehicles were associated with the 101st Ave address. Based on this information, officers began conducting surveillance at the 101st Ave address as well. Officers observed all five vehicles at both the Old Highway 99 and 101st Ave properties. Officers observed the vehicles at the 101st Ave property "multiple times each day both in the morning and the afternoon." *Id.* at 82.

In February 2018, task force personnel installed video cameras across the street from the Old Highway 99 residence and near the 101st Ave residence to observe the properties and the movement of vehicles. The cameras were installed on utility poles near the properties. Two cameras were installed near the Old Highway 99 property and one was set up near the 101st Ave property. Video surveillance revealed one of the vehicles, a box truck, "backing up to the shop on

Old Highway 99 and departing approximately 8 minutes later. It then arrived at the 101[st] Ave residence 15 minutes later and backed up to the shop at that location." *Id.* at 82. Additional surveillance revealed the same vehicles frequently traveling to the Capitol Ridge and Downey Lane properties. According to Special Agent Bach, the vehicle movements and travel patterns were consistent with those of marijuana grow operations.

Second, the affidavit notes that Detective Chris Packard reported smelling the odor of "fresh growing marijuana" at both the Old Highway 99 and Downey Lane properties. *Id.* at 83, 86. Detective Packard reported smelling marijuana first at the Old Highway 99 property while he was on the street outside of the property during the installation of the surveillance camera. Detective Packard smelled fresh marijuana at the Old Highway 99 property a second time while installing a global positioning system device (GPS tracker). He also detected the odor of fresh marijuana at the Downey Lane property while installing the same device. GPS trackers were installed on five vehicles during the investigation: a blue Acura MDX, a white Toyota Camry, a silver Lexus GS, a black Lexus GS, and a white Ford box truck.

Third, the affidavit outlines unusually high energy consumption at the four properties. Special Agent Bach obtained the power records through serving administrative subpoenas to the energy providers. The first power records received revealed unusually high energy consumption at the Old Highway 99 and 101st Ave properties. For example, under the previous owner of the Old Highway 99 property, the range of energy cost per month was $38.05 to $83.86. In contrast, the monthly power costs associated with the account leading up to the investigation ranged from $555.37 to $1,448.31. Bach also observed after a snowfall that while snow had accumulated on the residence at 101st Ave, no snow accumulated on the utility building at that location. Power

records also showed a significant increase in power consumption at the Capitol Ridge property. The utility buildings at Downey Lane also showed high power consumption. Bach noted "that an indoor marijuana grow requires high power usage." *Id.* at 83. He explained that growing marijuana indoors requires "grow equipment such as high-powered lights, ballasts, fans/ventilation equipment, and a significant amount of other equipment that require a significant amount of power, which would make the power usage at the residences and utility buildings at each address consistent with indoor marijuana growing operations." *Id.* at 84.

Fourth, Bach noted in the affidavit that individuals involved in marijuana grow operations "often put the power in other people's names to help avoid detection and investigation." *Id.* at 86. He noted the power accounts for the properties to be in the names of individuals who were not observed at those properties and did not appear to live there.

Finally, the affidavit discusses the results of an Employment Security Department search and a Department of Employment Security check of income for the four Le, Dang, Lu, and David Le. The search revealed that none of these four individuals reported any income for the three years prior to the investigation. Despite no reported income, the affidavit noted that the four individuals purchased multiple homes, paid significantly high energy bills, made home improvements, and purchased multiple vehicles. Bach explained that "marijuana-grow operations are a high cash business wherein an outside source hires on multiple local employees to tend to grows in homes that have been converted specifically for that purpose and whom are then paid regularly in cash for their efforts." *Id.* at 89.

B. Results of Investigation

A superior court judge issued the warrants and officers executed searches of the four properties in March 2018. In executing the search warrants, officers discovered over 1,000 marijuana plants: officers found approximately 450 plants at the Capitol Ridge property, over 350 plants at the Old Highway 99 property, and roughly 150 plants the 101st Ave property. The search also revealed tools and supplies used for manufacturing and distributing marijuana, such as commercial grade vacuum sealed bags. The search also revealed text messages between the defendants regarding the operation. For example, a text message from Le to David Le asked if his and Lu's places "have a lot of stuff to trim," which officers believed was in reference to trimming marijuana plants. 6 Verbatim Rep. of Proc. at 2435.

## II. PROCEDURAL HISTORY

In an amended information, Le was charged with one count of unlawful possession of a controlled substance (marijuana), with intent to deliver. Le was also charged with one count of unlawful manufacture of marijuana. For both counts, the information alleged that she or an accomplice was armed with a firearm during the commission of the offense and that the offense took place within 1,000 feet of a school bus stop. Le was jointly charged with her codefendants (Dang, Tran, Lu, and David Le).

A. Motion to Suppress

Before trial, Le moved to suppress numerous pieces of evidence. Relevant to this appeal, Le moved to "suppress all evidence and statements obtained as a result of an unlawful search and seizure." CP at 68. Le asserted that the search warrants lacked probable cause because the affidavit in support of the warrant failed to allege criminal activity, and failed to state that evidence of a

crime would be found at any of the locations identified in the warrant. Le also argued that the affidavit failed to establish probable cause because it did not indicate whether law enforcement checked on the legality and registration status of the operation. She argued that without confirmation that the operation was not legally registered, all of the facts included in the affidavit were equally consistent with lawful behavior.

In October 2021 and February 2022, the trial court held suppression hearings. The court entered findings of fact and conclusions of law on the CrR 3.6 hearing. In an unchallenged finding of fact, the court found that "[w]hether a marijuana grow is a commercial grow for recreational purposes or a cooperative grow for medical purposes, a marijuana grow must be registered with the Washington State Liquor and Cannabis Board (WSLCB)." *Id.* at 294. The court concluded as a matter of law that the detectives who applied for the warrant were not required to ascertain whether the grow operation in this case was registered with the WSLCB. The court further concluded that law enforcement is not required to "indicate in a search warrant affidavit whether they have checked the legal status of a marijuana grow with either or both the Department of Health and/or the WSLCB in order for the court to determine the existence of probable cause." *Id.* The court further found that the information in the search warrants "indicated a reasonable inference that criminal activity was occurring," and that the affidavits established probable cause. *Id.* Accordingly, the court denied Le's motions to suppress.

B. Jury Trial

In 2023, a jury trial was held against all 5 defendants—Le, Dang, Lu, Tran, and David Le. The jury found Le guilty of unlawful manufacture of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The jury further found that Le

committed these crimes within 1,000 feet of a school bus route stop. The court sentenced Le under the "First-Time Offender Waiver"[4] to serve 90 days of confinement followed by 6 months of community custody.

## ANALYSIS

### THE AFFIDAVIT ESTABLISHED PROBABLE CAUSE TO SEARCH ALL FOUR PROPERTIES

Le first argues that the search warrant was invalid because the affidavit failed to establish probable cause. She argues that the affidavit did not establish probable cause because it described innocuous activities that are consistent with legal activities. Le maintains that because the affidavit did not establish probable cause, we should remand with instructions to suppress all evidence seized by law enforcement. Alternatively, Le argues, even if probable cause otherwise supported the search of the Old Highway 99 and Downey Lane properties where the odor of marijuana was present, it did not support the warrant to search the other two properties, and we should remand with instructions to suppress evidence collected at the 101st Ave and Capitol Ridge properties.

The State responds that the facts in the affidavit were sufficient to establish probable cause. The State maintains that "[f]acts that individually would not support probable cause can do so when viewed together with other facts." Br. of Resp't at 15. The State argues that when viewed together, the facts "establish a reasonable inference that Le and her co-conspirators were probably involved in illegally growing marijuana at each of these four locations." *Id.* at 22.

Regarding Le's argument that even if the odor of marijuana established probable cause at two of the four properties, it did not extend to the other two properties, the State responds that Le failed to preserve this issue for appeal. The State argues that "[i]f the Court reaches this issue on

---

[4] Former RCW 9.94A.650 (2011).

the merits, it should conclude that the affidavit established probable cause as to all four of the properties." *Id.* at 42. Le responds that she sufficiently preserved the issue for appeal by challenging the warrant to search all four properties. In the alternative, Le argues that even if she did not preserve her challenge to the search of two properties where the odor of marijuana was not present, we should nonetheless review the issue because it involves a manifest error implicating a constitutional right.

We hold that the facts outlined in the affidavit, when viewed together, established probable cause to search all four properties, regardless of the fact that the odor of marijuana was only detected at two of the four properties. As such, we need not determine whether Le properly preserved for appeal her alternative argument that probable cause existed only in regard to the two properties where the odor of marijuana was detected.

A. Legal Principles

*1. Standard of Review*

We review the issuance of a search warrant for abuse of discretion and we give great deference to the issuing judge's probable cause determination. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). We also afford appropriate deference to the issuing judge's findings on reliability and credibility. *In re Det. of Petersen*, 145 Wn.2d 789, 800, 42 P.3d 952 (2002). At a suppression hearing, the trial court acts in an appellate-like capacity. *Neth*, 165 Wn.2d at 182. We review de novo the trial court's conclusion of whether an affidavit is supported by probable cause to issue a search warrant. *Id.*

*2. Establishing Probable Cause*

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a search warrant may be issued only upon a showing of probable cause. *State v. Chenoweth*, 160 Wn.2d 454, 462, 158 P.3d 595 (2007). "Probable cause requires more than suspicion or conjecture, but it does not require certainty." *Id*. at 476. An affidavit in support of a warrant application must contain "facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Scherf*, 192 Wn.2d 350, 363, 429 P.3d 776 (2018). The issuing judge "is entitled to make reasonable inferences from the facts and circumstances set forth in the affidavit." *Id.*

"A search warrant is entitled to a presumption of validity." *Chenoweth*, 160 Wn.2d at 477. When examining the trial court's conclusion, we examine " 'whether the qualifying information as a whole amounts to probable cause.' " *State v. Emery*, 161 Wn. App. 172, 202, 253 P.3d 413 (2011) (quoting *Petersen*, 145 Wn.2d at 800), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). Individual facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts in the search warrant affidavit. *State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). We review the search warrant affidavit in a commonsense rather than hypertechnical manner. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012). We resolve all doubts in favor of upholding the warrant. *Chenoweth*, 160 Wn.2d at 477.

*3. Motion to Suppress*

"Evidence seized pursuant to a search warrant must be suppressed if probable cause does not support the warrant." *State v. Gudgell*, 20 Wn. App. 2d 162, 180, 499 P.3d 229 (2021). The exclusionary rule requires the suppression of evidence obtained from an illegal search. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018). "This includes the initially seized evidence and any fruit of the poisonous tree." *Id.* The exclusionary rule has three primary objectives: "first, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the integrity of the judicial system by not tainting the proceedings with illegally obtained evidence." *Id.*

B. Application

In her brief to this court, Le asks us to analyze probable cause in a hypertechnical, non-commonsense manner. Le addresses each of the four factual pillars she contends law enforcement relied on in the search warrant affidavit (the suspects driving between the four properties, the high energy bills and humming sounds coming from the properties, the Employment Security Department records, and the odor of marijuana) and contends that each one, standing alone, is either equally consistent with legal activity or otherwise factually insufficient to support probable cause. This is precisely the type of analysis we are not permitted to conduct. As we note above, we are required to consider the affidavit in a commonsense rather than hypertechnical manner and consider the information provided in the affidavit as a whole. *Chenoweth*, 160 Wn.2d at 477; *Garcia*, 63 Wn. App. at 875. The magistrate is entitled to make reasonable inferences from the facts outlined in the affidavit. *Scherf*, 192 Wn.2d at 363. We judge the application for a search

warrant in light of common sense and we resolve all doubts in favor of upholding the warrant. *Chenoweth*, 160 Wn.2d at 477. Although it is true that "absent some other evidence of illicit activity," the presence of innocuous activities or items cannot support a finding or probable cause. *Neth*, 165 Wn.2d at 185. For example, in *Neth*, the court concluded that while possession of small baggies would not alone provide probable cause to search, "[a]dditional information such as being in a high drug crime area, baggies with the appearance of having once contained illicit substances, or observations of transactions involving the baggies may well [be] sufficient" to support a finding of probable cause. *Id*. at 185 n.3.

Here, while the facts outlined in the affidavit when viewed individually may not have been sufficient to establish probable cause, the law requires us to examine whether the facts and circumstances presented, when viewed as a whole, amount to probable cause. *Emery*, 161 Wn. App. at 202; *Garcia*, 63 Wn. App. at 875.

The affidavit outlined numerous facts to support an inference that the defendants were involved in criminal activity, including: vehicle movement and travel patterns; significantly high energy consumption; the odor of fresh marijuana at two of the properties; signs of operating a high cash business; and behavior indicating obfuscation efforts, such as registering utility accounts under the names of individuals who do not appear to live at, or even visit the properties. According to the affidavit, the vehicle movements and travel patterns observed by officers were "consistent with individuals involved in the manufacture of marijuana." CP at 83. The box truck was observed backing up at the utility building at the Old Highway 99 property, departing eight minutes later, and then arriving and backing up to the utility building at the 101st Ave property. The same vehicles were observed traveling repeatedly to each of the four properties.

No. 58336-4-II

The affidavit also outlined unusually high energy consumption at all four properties. At the Old Highway 99 property in the residence, for example, the energy costs per month under a previous owner ranged from $38.05 to $83.86. Under the owner of the account at the time of the search, the energy costs per month jumped from $555.37 to $1,448.31. The utility building at the Old Highway 99 property began consuming power in 2017, and showed monthly energy costs as high as nearly $3,000. Likewise, the utility building at the 101st Ave location showed energy consumption above the average commercial account. The Capitol Ridge location and the Downey Lane utility building also showed significant increase in power usage and unusually high consumption.

Moreover, the affidavit outlined the fact that utility accounts were registered to individuals who did not appear to live at the properties, and were registered to other people in what appeared to be an effort to "help avoid detection." *Id.* at 86. For example, while the Capitol Ridge property was owned by Dang and Le, the power account for that property is registered to someone named Nguyen Giang, "despite there being no observation of [Giang] or any vehicle registered to him at this location." *Id.* at 88.

While lawful explanations may exist for each of these facts on their own, when viewed together, it is reasonable to infer from these facts that Le and her codefendants were involved in criminal activity. Even excluding the presence of the odor of marijuana at two of the properties, we are still left with unusual travel patterns, exceptionally high power consumption, what appears to be obfuscation efforts, and evidence of spending significant amounts of money despite no reported income. When viewing the facts contained within the affidavit in this case, even absent the odor of marijuana, it is reasonable to infer that Le and her codefendants were engaged in

14

criminal activity and that evidence of such activity would be found at the four properties. The trial court did not err in concluding that the affidavit sufficiently established probable cause to search all four properties.[5]

Le also argues that even if probable cause was otherwise established, it was negated by the affidavit's omission that the marijuana growing operation was not registered with the state as a legal growing operation. Le argues that the magistrate issuing the warrant needed to be satisfied that she was neither growing marijuana pursuant to a valid medical cannabis card nor pursuant to a license to manufacture marijuana issued by the WSLCB as a precondition to finding probable cause. Le further contends that RCW 69.50.506, which places the burden of proving any exemption or exception to the Uniform Controlled Substances Act on the person asserting such an exemption or exception, does not apply in the search warrant context because a "person being searched cannot be required to disprove criminality." Br. of Appellant at 43.

As it relates to her medical marijuana argument, Le cites *State v. Reis*, 183 Wn.2d 197, 351 P.3d 127 (2015). In *Reis*, a case addressing the first iteration of former RCW 69.51A.040 (2015), the supreme court held that although that statute purported to decriminalize the possession and use of medical cannabis in certain circumstances if, among other things, the person was entered into the medical cannabis authorization registry and held a valid recognition card, at the time of Reis'

---

[5] With respect to Le's argument that if the odor of marijuana contributed to the finding of probable cause, then probable cause is necessarily *absent* for the two residences where no odor was detected, we disagree. Again, when looking at all of the information provided by law enforcement in the affidavit as a whole, which we must, it provides more than sufficient evidence to support probable cause. All four residences were connected based on the evidence set forth in the affidavit. That the odor of marijuana was present at only two of the residences does not erase all of the evidence supporting an inference that these residences were connected in a sophisticated marijuana manufacturing operation.

case there was no medical cannabis authorization registry. *Reis*, 183 Wn.2d at 207. The court held

that former RCW 69.51A.040 did not decriminalize the possession or manufacture of marijuana

and instead established an affirmative defense. *Id.* at 209. Thus, the search warrant issued in Reis'

case was not invalid because "Reis concede[d] that the possibility of proving the affirmative

defense does not undermine probable cause for a search warrant." *Id.* at 218.

The State, in response, correctly notes that no case has held that a search warrant

application must affirm, as a precondition to a finding of probable cause, that officers searched the

medical cannabis authorization database to confirm that the suspect does not hold a registration.

We disagree with Le's contention. *Reis* is inapposite to Le's case. The court in that case

rejected Reis' claim that his conduct was legal at the time of the search. *Id.* at 214. It did not hold,

as Le suggests, that because there now exists a medical cannabis authorization registry, law

enforcement must search the registry and advise the magistrate in the search warrant application

that the suspect is *not* in the registry. We also note that a suspect's presence in the registry does

not mean that their possession or use of marijuana is, in all respects, lawful. Former RCW

69.51A.040 contains additional requirements on the lawful possession and manufacture of

marijuana for medical purposes.[6]

With respect to Le's contention related to the overall limited legalization of marijuana, Le,

anticipating the State's argument that RCW 69.50.506 places the burden for establishing legal

---

[6] We also note that *Reis* cited *State v. Fry*, 168 Wn.2d 1, 6, 228 P.3d 1(2010) (plurality opinion), where our supreme court stated, without further analysis, that "a claimed [medical] authorization form does not negate probable cause" for a search warrant. Le argues that *Fry* is inapposite because the events of that case took place in 2004, prior to the limited legalization of marijuana. For the reasons set forth throughout this opinion, there were more than ample facts establishing probable cause in this case even without a statement in the warrant affidavit that the suspected grow operation was not registered.

possession or manufacture of marijuana on the person claiming that their possession or manufacture is legal, argues that RCW 69.50.506 does not apply to search warrants.

Chapter 69.50 RCW contains the Uniform Controlled Substances Act. Regarding burden of proof, the act states:

> (a) [ ] It is not necessary for the state to negate any exemption or exception in this chapter in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this chapter. The burden of proof of any exemption or exception is upon the person claiming it.
>
> (b) [ ] In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under this chapter, he or she is presumed not to be the holder of the registration or form. The burden of proof is upon him or her to rebut the presumption.

RCW 69.50.506.

Le argues that RCW 69.50.506 cannot be used to justify the search warrants in this case because "[t]he person being searched cannot be required to disprove criminality." Br. of Appellant at 43. But we need not hold that Le bore a burden, at the time of the search, to demonstrate an exception under RCW 69.50.506 because we reject Le's contention that in this case probable cause was lacking absent confirmation, in the warrant application, that the suspected grow operation was not legal. As the State notes, each of the locations named in the search warrant application were single-family residences. Pursuant to former WAC 314-55-015(5)(a) (2017), the WSLCB cannot approve a license to process cannabis at a personal residence.

Additionally, even though former WAC 314-55-410(1)(c), (g) (2017) allows qualifying medical cannabis users to form a cooperative to grow marijuana of no more than four people, it limits the number of plants the cooperative can grow to the total number of plants that each cooperative member is permitted to grow on their own. Under RCW 69.51A.250(6)(a), such a

cooperative can grow a total of only 60 plants.[7] The search warrant affidavit in this case set forth probable cause for a grow operation that far exceeded 60 plants.

In summary, there were more than sufficient facts in the search warrant affidavit to believe that there was a significant marijuana grow operation at the listed properties and that the suspected grow operation in this case was not a legal grow operation. We reject Le's contention that the search warrant affidavit was not supported by probable cause.

### CONCLUSION

We hold that the facts contained in the search warrant affidavit were sufficient to establish probable cause. As such, the trial court did not err in denying Le's motions to suppress evidence. We affirm.

CRUSER, C.J.

We concur:

LEE, J.

GLASGOW, J.

---

[7] RCW 69.51A.250 was amended in 2017 and 2022. Because these amendments do not impact our analysis, we cite to the current version of the statute. *See* LAWS OF 2022, ch. 16, § 129; LAWS OF 2017, ch. 317, § 8.