

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAR 2 2 2018
DATE
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on March 22, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | NO. 94208-1 |
| Respondent, | | |
| v. | | EN BANC |
| RAY LENY BETANCOURTH, | | |
| Petitioner. | | Filed __MAR 2 2 2018__ |

STEPHENS, J.—This case requires us to consider the "independent source doctrine," which is a recognized exception to the exclusionary rule under article I, section 7 of the Washington State Constitution. The superior court admitted into evidence Ray Betancourth's cell phone records, which were initially obtained under a jurisdictionally invalid district court warrant. Though a valid superior court warrant was subsequently issued for the same records, police did not physically return and reseize the evidence. In upholding admission of the cell phone records, the Court of Appeals fashioned what it deemed an "invalidity correction corollary" to the independent source doctrine. *State v. Betancourth*, No. 32683-7-III, slip op.

at 43-44 (Wash. Ct. App. Dec. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/326837_ord%20rec%20amn.pdf. Betancourth argues that this corollary improperly interjects reasonableness or good faith considerations that are incompatible with our state constitutional privacy rights.

We affirm the Court of Appeals. While we do not embrace the notion of an "invalidity correction corollary," we agree with the lower courts that the exclusionary rule does not apply in this case. We hold that Betancourth's cell phone records were admissible under our existing independent source doctrine.

## FACTS AND PROCEDURAL HISTORY

On September 19, 2012, Betancourth assembled a group of friends to look for Terrance Frank, whom Betancourth suspected of breaking his car windows a few days earlier. 8 Verbatim Report of Proceedings (VRP) (June 20, 2014) at 1211-12. Betancourth drove the group around in his pickup truck until they located Frank walking down the sidewalk with two other men, Jordan Lemus and Jose Rodriguez. Betancourth's group exited the truck and chased after Frank, Lemus, and Rodriguez. Betancourth turned back after realizing he had left his truck running, while his friends chased Lemus and Rodriguez into an alley. Betancourth's friend, Marco Cardenas, pulled out a pistol and fired twice, killing Rodriguez. 6 VRP (June 18, 2014) at 919.

On September 21, 2012, Toppenish police seized Betancourth's truck after witnesses identified the vehicle as having been used by Rodriguez's attackers. 1 VRP (Feb. 10, 2014) at 32-33. Betancourth arrived at the police station with his father and consented to an interview with Toppenish detectives. After the interview, Toppenish police obtained Betancourth's cell phone number. Later that afternoon, Detective Damon Dunsmore sent a preservation letter to Verizon Wireless to preserve records from September 19th to September 25th associated with Betancourth's number. Verizon preserved the phone records as requested.

On September 25, 2012, the Yakima County District Court granted a search warrant ordering Cellco Partnership, d/b/a Verizon Wireless, to provide Betancourth's cell phone records, including text messages, from September 19 to September 25, 2012. Clerk's Papers (CP) at 215, 9-14. Detective Dunsmore faxed the warrant to Verizon's custodian of records in New Jersey, and Verizon provided the requested phone records to Detective Dunsmore in pdf format via e-mail. *Id.* at 9, 69.

On October 9, 2012, Toppenish police called Betancourth back in for questioning. Betancourth denied any involvement in the crime. 8 VRP (June 20, 2014) at 1172. Police then showed Betancourth text messages from his cell, including a text message exchange with his girlfriend, Nancy Arriaga, where

Betancourth told Arriaga he wanted to "'beat the shit [out of] them.'" 7 VRP (June 19, 2014) at 1122. Toppenish police also played Betancourth an audio recording of Arriaga's statement. As the audio played, Betancourth stated, "'Guess you know what happened then.'" 8 VTP (June 20, 2018) at 1179. Toppenish police arrested Betancourth the following day.

In September 2013, almost a year after Betancourth's arrest, a Yakima County Superior Court judge ruled in a separate case that RCW 10.96.060 authorizes only superior courts to issue warrants for the records of out-of-state companies.[1] Based on this ruling, Deputy Prosecuting Attorney David Soukup, who was assigned to Betancourth's case, contacted Toppenish Police Department Detective Jaban Brownell and requested that he obtain a new warrant for the Verizon phone records from a superior court judge. Soukup requested that Detective Brownell use exactly the same information he had used in obtaining the search warrant from the district court judge. Essentially, the new warrant was intended to cure a jurisdictional defect in the prior warrant.

---

[1] RCW 10.96.060 provides:
A judge of the superior court may issue any criminal process to any recipient at any address, within or without the state, for any matter over which the court has criminal jurisdiction pursuant to RCW 9A.04.030. This section does not limit a court's authority to issue warrants or legal process under other provisions of state law.

On October 9, 2013, Detective Brownell presented an affidavit for probable cause to Yakima County Superior Court Judge Susan Hahn. The affidavit was essentially identical to the affidavit used in September 2012. The only information Detective Brownell added was that the district court had granted a search warrant on the same information, and that he had been requested by the prosecutor's office to reapply for the warrant from a superior court judge. *Id.* Judge Hahn authorized the search warrant that day.

On October 15, 2013, Detective Dunsmore faxed the new warrant to the custodian of records at Verizon Legal Compliance located in Texas. The facsimile face page stated, "'These records were requested by a district court warrant previously. Based on [a] recent court ruling they need to be based on a superior court warrant.'" CP at 216. The warrant did not request any additional information or records from Verizon. Verizon did not produce any records in response to the 2013 warrant because, as Verizon's executive relations analyst later testified, "[i]t would have been for the same information we had already provided." *Id.*; 2 VRP (June 2, 2014) at 147.

Before trial, Betancourth moved to suppress the Verizon cell phone records. Betancourth argued that the records were obtained as a result of an unlawful search and seizure because the 2012 district court warrant was invalid and Toppenish police

failed to obtain a second set of records pursuant to the 2013 superior court warrant. The trial court denied Betancourth's motion to suppress the text messages. 2 VRP (June 2, 2014) at 185-87. Without expressly mentioning the independent source doctrine in its ruling, the trial court stated that producing the records again would be fruitless and any violation of the statute was technical in nature. *Id.* at 186-87. Betancourth was ultimately found guilty of second degree felony murder and first degree assault.

The Court of Appeals affirmed the trial court's ruling allowing admission of the Verizon phone records.[2] Although the appellate court agreed with Betancourth that the independent source doctrine did not apply, at least not in its classic form, the court held that the records were admissible under a corollary to the independent source doctrine, which it called the "invalidity correction corollary." *Betancourth*, slip op. at 43-44. Under this corollary, "[e]vidence seized through an invalid search warrant need not be returned and reseized once the State garners a later valid search warrant as long as the invalid warrant does not taint the valid warrant." *Id.* at 42 (italics omitted). Finding that the phone records were properly admitted at trial, the Court of Appeals affirmed Betancourth's first degree assault conviction.

---

[2] The Court of Appeals reversed Betancourth's felony murder conviction and remanded for a new trial, based on Betancourth's argument that the prosecutor prejudicially misstated the law in closing arguments. *Betancourth*, slip op. at 24.

Betancourth petitioned this court for review, which we granted. *State v. Betancourth*, 189 Wn.2d 1008, 403 P.3d 39 (2017).

ANALYSIS

We review conclusions of law relating to the suppression of evidence de novo. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). Unchallenged findings of fact are treated as verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

The dispute in this case is over the scope of the independent source doctrine, an exception to the exclusionary rule recognized under article I, section 7. Betancourth argues that the Court of Appeals erred in holding that his cell phone records were properly admitted at trial under the so-called "'invalidity correction corollary'" to the independent source doctrine. Pet. for Review at 8. He asserts the corollary is inconsistent with article I, section 7 and simply a guise for importing a good faith or reasonableness analysis into state law. *Id.* at 8-9. The State counters that the independent source doctrine applies regardless of whether the challenged evidence is kept in police possession, so long as the police later obtain a valid search warrant that is untainted by the initial illegality. Answer to Pet. for Review at 3-4. According to the State, in this situation it would be senseless to require the formality of physically returning and reseizing evidence already seized during the initial

search. *Id.* at 6. Instead, the evidence should be treated as having been seized under the valid, second warrant.

We start by recognizing that the exclusionary rule generally requires that evidence obtained from an illegal search and seizure be suppressed. *Gaines*, 154 Wn.2d at 716-17. This includes the initially seized evidence and any fruit of the poisonous tree. *Id.*; *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). At its core, the exclusionary rule provides a remedy for individuals whose constitutional rights have been violated. As we have previously stated, the rule should be applied to achieve three objectives: first, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the integrity of the judicial system by not tainting the proceedings with illegally obtained evidence. *State v. Bonds*, 98 Wn.2d 1, 11-12, 653 P.2d 1024 (1982); *State v. Winterstein*, 167 Wn.2d 620, 632, 220 P.3d 1226 (2009).

The independent source doctrine is a well-established exception to the exclusionary rule. Though initially applied under a federal Fourth Amendment analysis, we have repeatedly held that the independent source doctrine is compatible with article I, section 7 of the Washington State Constitution. *Gaines*, 154 Wn.2d at 722; *Winterstein*, 167 Wn.2d at 633-34; *State v. Smith*, 113 Wn. App. 846, 856,

55 P.3d 686 (2002), *review denied*, 149 Wn.2d 1014, 69 P.3d 876 (2003); U.S. CONST. amend. IV. Under the independent source doctrine, evidence tainted by unlawful police action is not subject to exclusion "provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action." *Gaines*, 154 Wn.2d at 718. The independent source doctrine recognizes that probable cause may exist for a warrant based on legally obtained evidence when the tainted evidence is suppressed. *Winterstein*, 167 Wn.2d at 634. The rationale for the rule is that the police should not be in a worse position than they otherwise would have been in because of the error. *Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988) (quoting *Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)).

In applying the independent source doctrine, the determinative question is whether the challenged evidence was discovered through a source independent from the initial illegality. *Id.* at 542. To determine whether challenged evidence truly has an independent source, courts ask whether illegally obtained information affected (1) the magistrate's decision to issue the warrant or (2) the decision of the state agents to seek the warrant. *Id.*; *Gaines*, 154 Wn.2d at 722. If the illegal search in no way contributed to the issuance of the warrant and police would have sought the

warrant even absent the initial illegality, then the evidence is admissible through the lawful warrant under the independent source doctrine.

In this case, the Court of Appeals held that Betancourth's cell phone records were admissible through the valid 2013 superior court warrant. According to the court, even though Toppenish police failed to physically reseize the records pursuant to the 2013 superior court warrant, the records were admissible under an "invalidity correction corollary" to the independent source doctrine because the first warrant did not contaminate the latter warrant and "it would be senseless to demand that Toppenish law enforcement require Verizon to send another copy of the text messages already forwarded once by Verizon." *Betancourth*, slip op. at 44, 46.

Betancourth's primary argument is that the Court of Appeals' adoption of the "invalidity correction corollary" is simply a guise for importing a federal law good faith or reasonableness analysis into article I, section 7. Pet. for Review at 8-9. While these doctrines may be relevant under a Fourth Amendment analysis, neither good faith nor reasonableness are relevant to application of the exclusionary rule under our state constitution. However, as the State correctly points out, the Court of Appeals did not base its decision on either of these doctrines, nor was the court's decision an attempt to do so. Suppl. Br. of Resp't at 5. A close reading of the Court of Appeals' decision shows that the court's analysis properly focused on the

interplay between the initial defective warrant and the valid, untainted second warrant.[3]

It is well established that article I, section 7 provides greater protection to individual privacy rights than the Fourth Amendment. *Winterstein*, 167 Wn.2d at 631. Whereas the Fourth Amendment prohibits "unreasonable searches and seizures," article I, section 7 of our State constitution prohibits any invasion of an individual's right to privacy without "authority of law." In contrast to the Fourth Amendment, article I, section 7 "'recognizes an individual's right to privacy with no express limitations.'" *Id.* at 631-32 (quoting *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982)). Unlike its federal counterpart, Washington's exclusionary rule is "'nearly categorical.'" *State v. Afana*, 169 Wn.2d 169, 180, 233 P.3d 879 (2010) (quoting *Winterstein*, 167 Wn.2d at 636).

---

[3] Betancourth's argument also could be construed as criticizing the Court of Appeals' reasoning for being akin to the inevitable discovery doctrine, which we have rejected as incompatible with our exclusionary rule. *Winterstein*, 167 Wn.2d at 636. The inevitable discovery doctrine applies to evidence that would have been discovered by legal means, whereas the independent source doctrine applies to evidence that was actually discovered by legal means. In this case, the Court of Appeals concluded that the phone records were properly admitted through the valid 2013 superior court warrant. The court did not speculate whether the phone records hypothetically might have been obtained through lawful means, but instead focused on the existence of the valid second warrant and Verizon's decision not to resend records it had already sent to Toppenish police.

Because the federal exclusionary rule is focused on deterring unlawful police action, the United States Supreme Court has held that the rule should not be applied when police have acted in "good faith." *United States v. Leon*, 468 U.S. 897, 918-20, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). "Good faith" refers to the police officer's "'objectively reasonable reliance'" on something that appeared to justify a search or seizure when it was made. *Herring v. United States*, 555 U.S. 135, 142, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) (quoting *Leon*, 468 U.S. at 922). Thus, the federal good faith exception is applicable when a search or seizure was unconstitutional but the police officer's belief that it was constitutional was objectively reasonable at the time. *Afana*, 169 Wn.2d at 180.

In contrast, because the paramount concern of our state's exclusionary rule is protecting an individual's right of privacy, we have explicitly declined to adopt a good faith or reasonableness exception to the exclusionary rule under article I, section 7. *Id.* at 184. If a police officer has disturbed a person's "'private affairs,'" we do not ask whether the officer's belief that the disturbance was justified was objectively reasonable, but simply whether the officer had the requisite "'authority of law.'" *Id.* at 180. Under article I, section 7, the requisite "'authority of law'" is generally a valid search warrant. *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005) (quoting *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999)).

In admitting Betancourth's phone records, the Court of Appeals did not create a good faith or reasonableness exception to the warrant requirement. While the good faith exception considers the police officer's belief at the time of the initial, illegal search, it was irrelevant to the Court of Appeals' analysis whether Toppenish police obtained the 2012 district court warrant in good faith. Instead, the court held that the 2013 superior court warrant was untainted by the 2012 warrant, and concluded that retrieving additional copies of the phone records under the valid 2013 warrant would be meaningless because the police had already seized the records. *Betancourth*, slip op. at 46-47. Essentially, under the court's reasoning, the untainted 2013 warrant provided police the requisite "authority of law" to seize the phone records. In this regard, the so-called "invalidity correction corollary" is not a good faith or reasonableness test, but rather an application of our independent source doctrine to unique facts. The only difference is that the physical acquisition of the challenged evidence did not technically occur pursuant to a valid warrant, though it could have.

Because Toppenish police never physically reseized the phone records from Verizon pursuant to the valid 2013 superior court warrant, Betancourth's case differs from the standard independent source scenario. In its classic form, the independent source doctrine applies when the State procures the challenged evidence pursuant to

a valid warrant, untainted by prior illegality. *Betancourth*, slip op. at 43. In the first type of independent source scenario, police conduct an initial unwarranted search of a constitutionally protected area, during which they discover but do not seize incriminating items. Police later obtain a search warrant for the area and seize the evidence during the warranted search. For example, in *Gaines*, the police performed an illegal warrantless search of the trunk of the defendant's car, during which officers saw what appeared to be the barrel of an assault rifle and numerous rounds of ammunition. 154 Wn.2d at 714. Rather than seizing the items, officers immediately closed the trunk without disturbing the contents. *Id.* The following day, the police sought a search warrant for the defendant's trunk, which included a single reference to the officer's observation of the weapon, as well as other evidence to establish probable cause. *Id.* at 714-15. After obtaining the warrant and searching the vehicle, the police recovered the rifle and ammunition from the trunk of the defendant's car. *Id.* at 715. We concluded that this conduct violated article I, section 7 and that the appropriate remedy was to strike all references to the initial illegal search from the warrant affidavit when assessing whether probable caused existed to issue the original warrant; we held that the evidence was ultimately seized pursuant to a lawful warrant. *Id.* at 720, 722; *see also State v. Coates*, 107 Wn.2d 882, 887, 735 P.2d 64 (1987) ("a search warrant is not rendered totally invalid if the

affidavit contains sufficient facts to establish probable cause independent of the illegally obtained information"). In this variation, the independent source doctrine operates to purge the taint of an invalid warrant. No second warrant need be issued.

A different variation of the independent source doctrine involves police executing a valid warrant authorizing the seizure of evidence that had initially been seized illegally. For example, in *State v. Miles*, 159 Wn. App. 282, 286-87, 244 P.3d 1030, *review denied*, 171 Wn.2d 1022, 257 P.3d 663 (2011), the State seized the defendant's bank records pursuant to an administrative subpoena. We held that a judicial warrant or subpoena (not an administrative one) was required, and ordered the evidence suppressed. *State v. Miles*, 160 Wn.2d 236, 247-48, 156 P.3d 864 (2007). The State then returned the records to the bank and obtained a judicial search warrant for the same records. The defendant moved to suppress the bank records, arguing in part that the independent source exception applies only where information is illegally discovered but no evidence is seized during the illegal search. *Miles*, 159 Wn. App. at 290. The Court of Appeals rejected this argument, holding that the independent source exception applies to allow the admission of evidence that was originally seized by means of an unlawful search, so long as the evidence was later lawfully obtained. *Id.* at 294-95 (quoting *Murray*, 487 U.S. at 541-42).

Betancourth's case is not exactly like either of these independent source scenarios because the phone records were not "ultimately . . . obtained" pursuant to the valid 2013 warrant. *Gaines*, 154 Wn.2d at 718. The State argues, however, that the independent source doctrine does not require the formality of physically reseizing evidence already seized during an initial, unlawful search. To support this argument, the State relies on *United States v. Herrold*, 962 F.2d 1131 (3d Cir. 1992). Answer to Pet. for Review at 5-6. In *Herrold*, police officers unlawfully entered a residence and noticed drugs and a pistol inside. 962 F.2d at 1134. The officers seized the pistol during the warrantless entry but did not seize the drugs until after procuring a valid search warrant. *Id.* Recognizing that the gun had been seized during the unlawful entry and not during the subsequent warranted search, the Third Circuit nonetheless concluded that "we see no reason not to treat the gun as also being seized pursuant to the search warrant which specifically authorized the seizure of 'firearms of any type.'" *Id.* at 1143. The court explained that it would be dangerous to require officers to leave a weapon unsecured until they obtained a warrant, and senseless to require the formality of physically reseizing the gun already seized during the initial entry. *Id.* Paraphrasing *Herrold*, the State argues here that Betancourth's phone records "should be treated as seized under the valid

Superior Court search warrant that was subsequently issued." Answer to Pet. for Review at 6.

The Court of Appeals accepted this argument, and we do too. The *Herrold* decision makes good sense and aligns with our reasoning in *Gaines*, *Coates*, and *Miles*. The purpose of the independent source doctrine is met here because Betancourth's text messages were required to be produced under the valid 2013 superior court warrant, which was untainted by any prior illegality. Toppenish police did not gain any information from the phone records initially supplied in response to the 2012 district court warrant that led them to seek the 2013 superior court warrant. Nor was the magistrate's decision to issue the 2013 superior court warrant affected by, or made in reliance on, information obtained from the illegal search. Assuming Verizon had produced a second copy of the phone records in response to the superior court warrant, there is no doubt that the records would have been admissible under the independent source doctrine. The only fact that removes this case from the classic independent source scenario is the State's failure to return and then reseize the evidence. But, our law does not require a "do over" in situations such as this. Indeed, if the lack of a seizure under the second warrant were deemed fatal, then it would seem difficult to justify *Coates* and *Gaines* as legitimate independent source cases. In neither of those cases did the State obtain a second,

valid warrant; rather, on appeal we backed out the unlawfully obtained information in the original warrant and held the warrant was otherwise valid. Similarly here, it is possible to back out the 2012 district court warrant and deem the records seized under the valid 2013 superior court warrant.

Further, we have testimony from Verizon that tells us exactly why the records were never reproduced in response to the second warrant. The testimony shows that when Verizon received the 2013 superior court warrant, it understood the warrant to be a request for the same records already provided. 2 VRP (June 2, 2014) at 147. According to Verizon's executive relations analyst, no documents were sent after the second search warrant because "[i]t would have been for the same information we had already provided." *Id.* Although Verizon never physically reproduced the records in response to the 2013 superior court warrant, Verizon considered itself in compliance with the 2013 warrant because Toppenish police already had possession of the records.

Applying the exclusionary rule in this case simply does not advance the objectives underlying the rule. To always require the physical reseizure of evidence initially seized unlawfully but later authorized would go beyond protecting the privacy interests of individuals in this state and would not serve the ends of justice. Toppenish police had a valid warrant for Betancourth's records, and he was in no

worse position at trial than had the initial warrant not issued. "'The exclusionary rule is a sanction, and sanctions are supposed to be proportioned to the wrong-doing that they punish.'" *United States v. May*, 214 F.3d 900, 906-07 (7th Cir. 2000) (internal quotation marks omitted) (quoting *United State v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993)).

While we affirm the Court of Appeals, we do not see this case as necessitating any "corollary" to the well-established independent source doctrine. The facts of this case simply represent a new application of the existing doctrine that does not diminish the constitutional protections guaranteed by article I, section 7. While it is appropriate to recognize the admissibility of the phone records under the independent source doctrine in this case, the result might be different if we were faced with a different set of facts. For example, if this case involved fruit of the poisonous tree derived from the initial unlawful seizure of phone records, the challenged evidence arguably would not be admissible under the independent source rule. Here, however, the challenged evidence is not fruit of the poisonous tree, but rather the phone records themselves. A different result might also be appropriate if we were dealing with evidence other than static records, such as the weapon seized in *Herrold*. Depending on the evidence involved, additional considerations might be relevant, such as whether the initial seizure was necessary for community or

officer safety, or whether returning the evidence would risk its destruction. In this case, we are not dealing with facts and variables that might complicate the analysis or risk eroding the protections of article I, section 7. The records admitted at trial were the same as those originally produced, and the sole reason they were not produced by Verizon a second time was because nothing had changed.

CONCLUSION

While we decline to embrace the Court of Appeals' "invalidity correction corollary" label, we hold that its application of the independent source doctrine is consistent with our state's exclusionary rule. Recognizing application of the independent source doctrine on the facts of this case is not a guise for importing a good faith or reasonableness test into our article I, section 7 analysis. Rather, it appropriately recognizes that in certain situations, the failure to reseize evidence already seized is a mere technical defect that should not preclude its admission. Although Toppenish police did not physically reseize the phone records pursuant to the 2013 superior court warrant, this failure was merely technical in nature and did not diminish Betancourth's constitutional rights. The Court of Appeals properly held that the phone records were admissible through the 2013 warrant. For this reason, we affirm the Court of Appeals.

_____
Stern, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.