# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51258-1-II |
| Respondent, | |
| v. | |
| PATRICIA JOANNE LEWIS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following a stipulated facts trial, Patricia Lewis appeals her conviction of unlawful possession of a controlled substance—methamphetamine.  She argues that the trial court erred by denying her motion to suppress evidence that was the fruit of an unlawful search. We agree that the trial court erred by denying Lewis's motion to suppress, and we reverse and remand for the trial court to dismiss Lewis's conviction.[1]

## FACTS

After her CR 3.6 motion to suppress was denied, Lewis submitted her case to the trial court on stipulated facts.  The trial court found her guilty of unlawful possession of a controlled substance—methamphetamine.

---

[1] Lewis additionally argues that the judgment and sentence contains scrivener's errors and that certain legal financial obligations (LFOs) are no longer authorized.  Because we reverse Lewis's conviction, we do not address these arguments.

## I. FACTS ELICITED AT CR 3.6 HEARING

Grays Harbor County Sheriff's Deputy Jeremy Holmes was dispatched to a residential burglary call at the home of Barbara Wilbur. Wilbur reported that the burglary occurred sometime within the preceding three hours. Wilbur reported several items missing, including her black purse.

While driving to Wilbur's residence, Deputy Holmes observed a vehicle parked lawfully, but in what he considered, an "odd spot." Verbatim Report of Proceedings (VRP) (July 27, 2017) at 14. The vehicle was parked next to a wooded area that was "fairly close" to Wilbur's residence. VRP (July 27, 2017) at 14.

Deputy Holmes exited his patrol car and approached the parked vehicle. It was raining and the vehicle's windows were fogged up, so Deputy Holmes could not see inside. The vehicle's hood was warm. Deputy Holmes knocked on the vehicle window and announced his presence twice. Deputy Holmes looked in the woods near the parked vehicle and shouted "sheriff's office," but no one responded. VRP (July 27, 2017) at 17.

Deputy Holmes testified that he wanted to "confirm that nobody was in [the vehicle]" and also to "look to make sure that no one needed [his help]." VRP (July 27, 2017) at 17. He opened the unlocked driver's door and looked in the vehicle. No one was in the vehicle, but Deputy Holmes observed several items in the back seat, including a backpack with a black purse sticking out of it. The black purse appeared to match Wilbur's description of her missing purse.

Deputy Holmes closed the door, and then called Wilbur to have her describe the purse and to meet him at the vehicle. Using Deputy Holmes's flashlight, Wilbur looked through the

vehicle's window by pressing her face against the glass.  Wilbur identified the black purse as her own.

Deputy Holmes applied for a search warrant of the vehicle.  Grays Harbor County Sheriff's Sergeant Robert Lewis and Grays Harbor County Sheriff's Detective Mike Osgood responded to the scene.  While law enforcement were waiting at the vehicle for the search warrant, Myra Keel and Lewis emerged from the woods and approached the vehicle.  Keel and Lewis were very wet from being in the rain and brush.  The women told law enforcement that they had been picking mushrooms in the wooded area.  When asked by law enforcement, both Keel and Lewis declined to give police permission to search the vehicle.[2]

Lewis was arrested based on probable cause related to residential burglary.  Detective Osgood searched Lewis incident to arrest, and found a small container in her pocket containing methamphetamine.

At the CrR 3.5 hearing, Lewis argued that when Deputy Holmes opened the door, he performed an unlawful warrantless search.  Lewis further argued that the unlawful search led to Lewis's arrest and subsequent search of her person, which resulted in discovery of the methamphetamine.  Therefore, Lewis argued, the evidence obtained from the search of her person should be suppressed.

## II.  TRIAL COURT'S ORAL RULING

The trial court ruled that the decision "hinges on whether or not it was legal for [Deputy Holmes] to open the door" to the vehicle, and denied the motion to suppress.  VRP (July 27,

---

[2] Law enforcement subsequently searched the vehicle pursuant to the warrant.  The black purse belonged to Lewis.  Law enforcement determined that Keel and Lewis were not involved in the burglary.

2017) at 89-90.  The trial court, considering that Deputy Holmes was responding to the scene of

a burglary and there was a vehicle "oddly parked" a short distance away, found:

> I believe it was reasonable for him to knock on the windows when he couldn't see because it was so fogged up, which is an indicator somebody was in or had recently been in the vehicle, coupled with the warm engine.  And I think for all the purposes that I'm sure were going through his mind, including the fact that he approached and stood back by the passenger window because he didn't know if somebody was armed and dangerous, it's almost kind of a combination of community caretaking in case there is somebody that needed assistance in that oddly parked place, possible witnesses in—inside, maybe the—didn't hear him knock the first time or whatever, or possible burglary suspect in the act of—they pulled over and getting ready to pull out and all of a sudden he pulls up and they just hunker down.
>
> So, to me, just open the door and check when it was unlocked, I think is reasonable police work, and everything else from there just seems to flow.  Once he saw the black purse, once the victim came out and identified that as her black purse and they saw the search warrant, everything was reasonable the way they handled it.  I'm going to admit the evidence that ultimately was due to the search incident to arrest.

VRP (July 27, 2017) at 91-92.

### III.  TRIAL COURT'S WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court's findings and conclusions document contains three sections: "Disputed

Facts," "Findings of Fact," and "Conclusions of Law."  CP at 52, 53, 54 (capitalization omitted).

The trial court's "Disputed Facts" are factual findings, but the "Findings of Fact and

"Conclusions of Law" appear to be conclusions of law.

The trial court made the following findings and conclusions.

A.      *Disputed Fact 1*

When Deputy Holmes was en route to Wilbur's residence, he "noted" a vehicle "parked

within walking distance from the burglary victim's residence.  The burglary victim had reported

4

that the burglary occurred within the last three hours and that she was missing a purse, wallet, and jewelry boxes." CP at 52.

B.     *Disputed Fact 2*

> The windows of the vehicle were fogged over and Deputy Holmes was unable to see inside the vehicle. Deputy Holmes knocked on the window and he did not receive a response so he opened the door. Deputy Holmes looked in the vehicle, but did not enter the vehicle.

CP at 53.

C.     *Disputed Fact 3*

> Deputy Holmes observed several items in the back seat, including a backpack with a small black purse sticking out of it. Deputy Holmes called the burglary victim to get a more detailed description of the missing items. Deputy Holmes believed the purse he observed matched the description given to him by the burglary victim and asked the burglary victim to respond to the scene to possibility [sic] identify her missing items.

CP at 53.

D.     *Disputed Fact 4*

> The burglary victim identified the purse as being hers and a search warrant for the vehicle was thereafter was [sic] obtained. Once the purse was removed from the vehicle under the search warrant, it was found that the purse inside the vehicle did not belong to the burglary victim. However, the Defendant, who was later found to be associated with the vehicle, had methamphetamine on her person and inside her purse following a search incident to arrest.

CP at 53.

E.     *Finding of Fact 1*

The trial court found that "Deputy Holmes was conducting both a community caretaking function as well as an investigation function in checking on the vehicle for persons who may need help and for person[s] who may have witnessed or been involved in the burglary." CP at 53 (FF 1).

F.    *Findings of Fact 2 and 3*

The trial court also found that "[t]he combination of community caretaking duties and the possibility that the vehicle may have contained witnesses and/or suspects" made it reasonable for Deputy Holmes to open the door and "look into the vehicle due to the windows being fogged over in order to see if there was anyone inside who needed assistance and/or who might have been witnesses or suspects to the burglary investigation." CP at 54 (FF 2, 3).

Additionally, the trial court found that the police officers "were conducting reasonable police work by having the burglary victim come down to possibly identify the purse and/or other items visible by visually inspecting the vehicle." CP at 54.

G.    *Conclusions of Law*

The court concluded that "Deputy Holmes acted reasonably under his community caretaking duties as well as under his duty to investigate an active crime." CP at 54.

Lewis then agreed to a stipulated facts trial, and the trial court convicted her of unlawful possession of a controlled substance—methamphetamine. Lewis appeals.

ANALYSIS

Lewis argues that the trial court erred by denying her motion to suppress. We agree.

I. MOTION TO SUPPRESS

Lewis argues that the trial court's conclusions are not supported by its findings. Specifically, she argues that Deputy Holmes's warrantless search of the vehicle—his opening of the vehicle door—was not justified based on "reasonable police work" or the community caretaking exception, and therefore, the evidence obtained from the search incident to arrest

should have been suppressed as fruit of the unlawful search of the vehicle. The State argues that Deputy Holmes's warrantless search was justified under the community caretaking exception.[3]

As a threshold issue, Lewis argues that the State has abandoned its argument that Deputy Holmes's warrantless search was "reasonable police work." Br. of Appellant at 10-11. On appeal, the State argues only that the search was properly performed under the community caretaking exception to the warrant requirement. We agree with Lewis; the State has abandoned its arguments except that the search was justified under the community caretaking exception.

Lewis assigns error to conclusion of law 2 that says "Deputy Holmes acted reasonably under his community caretaking duties and as well as under his duty to investigate an active crime." CP at 54. Lewis also assigns error to the trial court's findings of fact 1, 2, and 3. Findings of fact 1, 2, and 3 are actually conclusions of law because they are determinations "made by a process of legal reasoning from facts in evidence." *State v. Niedergang*, 43 Wn. App. 656, 658, 719 P.2d 576 (1986). Findings of fact are determinations of "whether evidence shows that something occurred or existed." *Niedergang*, 43 Wn. App. at 658. We review a conclusion of law mislabeled as a finding of fact as a conclusion of law. *State v. Gaines*, 122 Wn.2d 502, 508, 859 P.2d 36 (1993). Accordingly, we review the contested findings of fact as conclusions of law.

---

[3] "Reasonable police work" is not a recognized exception to the warrant requirement. The trial court did not make findings of fact or conclusions of law supporting an investigative stop or exigent circumstances.

A.       *Legal Principles*

We review a trial court's conclusions of law de novo to determine whether they are supported by the findings of fact. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). We treat unchallenged findings as verities on appeal. *State v. Kinzy*, 141 Wn.2d 373, 382, 5 P.3d 668 (2000).

Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision requires police officers to obtain a search warrant to conduct a lawful search, unless excused by a recognized exception to the warrant requirement. *State v. Ettenhofer*, 119 Wn. App. 300, 307, 79 P.3d 478 (2003). Because we presume that a warrantless search violates the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, the State must prove that the search fits within one of the narrowly drawn exceptions to the warrant requirement. *Garvin*, 166 Wn.2d at 249-50. Community caretaking is a recognized exception to the warrant requirement. *Kinzy*, 141 Wn.2d at 385-86.

B.       *Warrantless Search*

Lewis argues that the trial court erred by denying her motion to suppress because the search was not justified by the community caretaking exception. We agree.

Community caretaking is an exception to the warrant requirement, recognizing that local law enforcement officers frequently respond to situations where there is no claim of criminal liability. *Kinzy*, 141 Wn.2d at 385-86. The community caretaking exception is "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Kinzy*, 141 Wn.2d at 385 (emphasis omitted) (quoting *Cady v. Dombrowski*,

413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)). Courts have applied the exception to the search of vehicles and the rendering of emergency aid and routine checks on health and safety. *Kinzy*, 141 Wn.2d at 386.

Community caretaking is permitted only if "'(1) the officer subjectively believed that someone likely needed assistance for health or safety reasons; (2) a reasonable person in the same situation would similarly believe that there was a need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched.'" *Kinzy*, 141 Wn.2d at 386, 387 (quoting *State v. Menz*, 75 Wn. App. 351, 354, 880 P.2d 48 (1994)).

When evaluating a routine check on health and safety, courts must determine whether an officer's encounter with a person is reasonable. *State v. Moore*, 129 Wn. App. 870, 879, 120 P.3d 635 (2005). Whether an encounter made for noncriminal and noninvestigatory purposes is reasonable depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function. *Kinzy*, 141 Wn.2d at 386-87.

Community caretaking is totally divorced from a criminal investigation. *Kinzy*, 141 Wn.2d at 385; *Moore*, 129 Wn. App. at 880. Community caretaking cannot be used as a pretext for a criminal investigation. *Kinzy*, 141 Wn.2d at 394. Courts "must cautiously apply the community caretaking function exception because of 'a real risk of abuse in allowing even well-intentioned stops to assist.'" *Kinzy*, 141 Wn.2d at 388. Once the exception applies, "police may conduct a noncriminal investigation so long as it is necessary and strictly relevant to performance of the community caretaking function." *Kinzy*, 141 Wn.2d at 395.

The trial court's conclusion that community caretaking justified Deputy Holmes's opening of the vehicle door is not supported by the trial court's findings. The only findings of fact pertaining to community caretaking were that the vehicle's windows were fogged over, Deputy Holmes was unable to see inside, and no one responded when he knocked on the vehicle window. Moreover, the trial court found that Deputy Holmes was "checking on the vehicle for . . . person[s] who may have witnessed or been involved in the burglary." CP at 53. These facts do not support the conclusion that Deputy Holmes opened the vehicle door because he reasonably believed that anyone in the vehicle was in need of assistance. Thus, the trial court's findings do not support the trial court's conclusion that Deputy Holmes's warrantless search of the vehicle was justified by community caretaking. *See Kinzy*, 141 Wn.2d at 386.

Accordingly, we hold that the trial court's findings and conclusions do not demonstrate that the community caretaking justified the warrantless search of the vehicle.

C.      *Fruit of the Unlawful Search*

Lewis contends that the evidence seized from her person incident to arrest should have been suppressed because it was the fruit of the unlawful search of the vehicle. We agree.

As a general rule, evidence obtained through an illegal search must be suppressed under the exclusionary rule. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018); *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). The exclusionary rule applies to evidence that was seized during an illegal search, and also evidence derived indirectly from an illegal search, the so-called "fruit of the poisonous tree." *Betancourth*, 190 Wn.2d at 364; *Kinzy*, 141 Wn.2d at 393.

No. 51258-1-II

"For the exclusionary rule to apply, there must be some proximate causal connection between the misconduct and the evidence." *State v. Mayfield*, No. 95632-4, slip op. at 20 (Wash. Feb. 7, 2019) http://www.courts.wa.gov/opinions/pdf/956324.pdf. The exclusionary rule applies only if the evidence was obtained as a result of the unlawful police action. *State v. D.E.D.*, 200 Wn. App. 484, 491, 402 P.3d 851 (2017).

Here, Deputy Holmes's initial search of the vehicle was unlawful. Deputy Holmes's unlawful search led to the discovery of the black purse, which Deputy Holmes and Wilbur believed belonged to Wilbur. The purse was used as probable cause to arrest Lewis, which led to the subsequent search of her person and the subsequent discovery of the methamphetamine. Under the fruit of the poisonous tree doctrine, the evidence of the methamphetamine should have been suppressed. Without such evidence, there is no evidence to support Lewis's conviction. Accordingly, we reverse and remand for the trial court to dismiss Lewis's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J

We concur:

Glasgow, J.

Cruser, J.

11