# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53924-1-II |
| Respondent, | |
| v. | |
| PALLA SUM, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Palla Sum appeals his conviction of making a false or misleading statement to a public servant.[1] Sum argues that the trial court erred when it denied his CrR 3.6 motion to suppress statements wherein he provided a false name to an officer because he was seized when he made the statement and because the seizure was not justified by reasonable suspicion.

We hold that Sum was not seized at the time he made the false statement, and the trial court properly denied Sum's motion to suppress.

Accordingly, we affirm.

---

[1] Sum was also convicted of attempting to elude a police vehicle and first degree unlawful possession of a firearm. Sum challenges only his conviction for making a false or misleading statement to a public servant.

FACTS

I. FACTS LEADING TO SUM'S ARREST

Pierce County Sheriff's Deputy Mark Rickerson was on patrol at 9:15 in the morning when he noticed a car that was parked in front of a church. Stolen vehicles had previously been recovered from that location, which was considered a "high-crime" area. Clerk's Papers (CP) at 86. And about four or five months prior, a resident of a house across the street from the church had informed Rickerson that he had noticed suspicious vehicles parking in the same location.

Rickerson parked to the east of the car, careful to leave substantial room between them. Rickerson then ran the car's license plate through a database to see who the registration belonged to and to check whether it had been reported stolen. The car had not been reported stolen, and its bill of sale was filed in Oregon, matching the Oregon license plate.

Rickerson ran a check on the license plate on the car and identified the vehicle identification number (VIN), after which he approached the car to confirm that his records matched the number displayed on the dash. It was at that moment that Rickerson saw that both Sum, who was in the driver's seat, and Sum's passenger, were "slumped over" and appeared unconscious. 1 Verbatim Report of Proceedings (VRP) at 21. Rickerson knocked on the driver's side window until Sum roused several seconds later.

Sum rolled his window down slightly, and Rickerson asked what Sum and his passenger were doing in the area. Sum responded that they were visiting a friend who lived across the street. Rickerson asked Sum to whom the car Sum was sitting in belonged. Although the car actually belonged to Sum, Sum answered with the first name of someone else. Sum did not provide a last name.

2

Rickerson then asked whether Sum and his passenger "had I.D. on them," and Sum inquired why Rickerson wanted this information. *Id.* at 25. Rickerson told Sum that he requested Sum's identification because Sum and his passenger "were sitting in an area known for stolen vehicles," and Sum "did not appear to know to whom the vehicle he was sitting in belonged." CP at 87. Sum then provided Rickerson with a false name and date of birth.

Rickerson returned to his patrol car to enter the information he was given into his computer. While Rickerson was in his patrol car, Sum started his engine, reversed quickly, and drove off at a high rate of speed. Rickerson turned his emergency lights on and began to pursue Sum. Sum drove past a stop sign without stopping and ran several red lights before eventually crashing his car into the front yard of a home. Sum then attempted to flee on foot until he was apprehended. An officer discovered a firearm on the floor of Sum's car, which Rickerson later determined had been stolen in Oregon.

## II. PROCEDURAL FACTS

The State charged Sum with attempting to elude a pursuing police vehicle, first degree unlawful possession of a firearm, and making a false or misleading statement to a public servant.

Sum moved to suppress his statement that formed the basis of the making a false statement charge, arguing that he was unlawfully seized at the moment when Rickerson explained to Sum that he requested Sum's identification because he suspected Sum of possible vehicle theft.[2] At the hearing on the motion to suppress, Rickerson testified consistently with the facts as stated above.

---

[2] Sum's motion to suppress encompassed all the evidence obtained following the seizure, however, on appeal, Sum only challenges the trial court's admission of his statement to Rickerson in which he gave Rickerson a false name and date of birth.

The State argued that Sum was not seized until Rickerson illuminated his emergency lights. It further argued that by that time, Rickerson had reasonable suspicion sufficient to justify detaining Sum because (1) Sum was parked in a high-crime area, (2) stolen cars had been recovered from that same location in the past, (3) Sum told Rickerson that the vehicle he was sitting in did not belong to him, (4) when asked who the car belonged to, Sum provided only a first name, and (5) after Rickerson returned to his car to run Sum's identification information, Sum drove off at a high rate of speed.

Following the hearing on the Sum's suppression motion, the trial court denied Sum's motion and entered written findings of fact and conclusions of law. Relevant here, the trial court entered the following conclusions of law:

> 3. The facts that Defendant then told Rickerson that the vehicle in which he was sitting did not belong to him, that he could not fully identify the owner of that vehicle, and, to a lesser extent, the fact that the location in which Defendant had parked was a high-crime area from which stolen vehicles had been recovered, were specific and articulable facts which would lead one to believe that there was a substantial possibility that criminal conduct had occurred, and hence, justified a *Terry* stop of Defendant which rendered Rickerson's request for Defendant and his passenger to identify themselves lawful and reasonable
>
> 4. Because Rickerson did not retain Defendant's physical identification to conduct his records check, Defendant was not seized when Rickerson asked him to identify himself, and Defendant's present motion to suppress evidence obtained thereafter as the product of an unlawful seizure is therefore denied, and such evidence is admissible.

*Id.* at 88-89 (citation omitted).

At trial, the State argued that Sum was guilty of making a false or misleading statement to a public servant based on the false identity information he provided to Rickerson. A jury found Sum guilty of all charges. Sum appeals his conviction of making a false or misleading statement to a public servant.

4

STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review conclusions of law de novo and findings of facts supporting the conclusions for substantial evidence. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017). Unchallenged findings are verities on appeal. *State v. Betancourth*, 190 Wn.2d 357, 363, 413 P.3d 566 (2018).[3]

DISCUSSION

I. SEIZURE

Sum argues that he was seized when Deputy Rickerson informed Sum that he suspected Sum of vehicle theft in response to Sum's question regarding the reason Rickerson wished to see Sum's identification. We disagree. Under the totality of the circumstances, Sum was not seized when he provided false identification information to Rickerson.

A. LEGAL PRINCIPLES

Under the Washington Constitution, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7.[4] When a seizure is conducted without a warrant, it necessarily violates the Washington constitution unless one of the carefully

---

[3] As to the factual findings, Sum assigns error only to finding of fact 8, pertaining to the number of houses located across the street from the church where he was encountered by Rickerson. Sum challenges the finding as part of his argument that Rickerson lacked sufficient reasonable suspicion to justify his detention. However, because we hold that Sum was not seized, even if Sum's contention regarding finding of fact 8 has merit, it does not alter our decision. All other factual findings will be treated as verities. *See Betancourth*, 190 Wn.2d at 363.

[4] The Fourth Amendment to the United States Constitution also protects an individual's right to be free from an unreasonable search and seizure. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). It has been well established that article I, section 7 provides greater protection to individual privacy rights than the Fourth Amendment. *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009); *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004).

drawn exceptions to the warrant requirement applies. *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004). We thus begin our analysis by determining whether a warrantless seizure has occurred. *Id.* Sum bears the burden of proving that he was seized. *Id.*

A seizure takes place when "an individual's freedom of movement is restrained, and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." *Id.* An officer's subjective suspicions are irrelevant to determining whether a seizure has occurred. *State v. O'Neill*, 148 Wn.2d 564, 575, 62 P.3d 489 (2003). Rather, whether a seizure has occurred is an objective inquiry involving considerations of the actions of law enforcement and the totality of the circumstances. *Rankin*, 151 Wn.2d at 695. The circumstances are viewed from the perspective of a reasonable person to determine whether that individual would feel he or she was being detained. *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009).

Washington courts have identified a nonexclusive list of police actions that are indicative of a seizure: "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* at 664 (internal quotation marks omitted) (quoting *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998)). Without evidence of this nature, "'otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.'" *Young*, 135 Wn.2d at 512 (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 555, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

Not every interaction between a police officer and an individual rises to the level of a seizure such that the individual's rights under article I, section 7 become implicated. *Rankin*, 151

Wn.2d at 695. For example, article I, section 7 does not prohibit mere "social contacts" between police and individuals. *Young*, 135 Wn.2d at 511.

A social contact exists "someplace between an officer's saying 'hello' to a stranger on the street and, at the other end of the spectrum, an investigative detention." *Harrington*, 167 Wn.2d at 664. An officer who suspects the possibility of criminal activity may engage an individual in conversation and request identification without exceeding the scope of a social contact. *State v. Mote*, 129 Wn. App. 276, 282, 120 P.3d 596 (2005); *O'Neill*, 148 Wn.2d at 577; *see also State v. Armenta*, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997) ("[A] police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention."). An encounter may begin as a social contact but as the degree of intrusion progresses, it may move "further from the ambit of valid social contact" and evolve into a seizure. *Harrington*, 167 Wn.2d at 667.

B. APPLICATION

Sum relies on *State v. Johnson*, 8 Wn. App. 2d 728, 440 P.3d 1032 (2019) to argue that he was seized because after asking for identification, Rickerson made it apparent to Sum that he asked for Sum's identification to investigate Sum for vehicle theft. In *Johnson*, Division One of this court held that the officers' conduct in requesting Johnson's physical identification, combined with the officers' actions that outwardly evinced their suspicion that Johnson was involved in a vehicle theft, "would lead a reasonable innocent person to believe that the vehicle, and by extension its driver, was the subject of an ongoing criminal investigation." *Johnson*, 8 Wn. App. 2d at 744. A reasonable person under such circumstances, in turn, would "believe that ignoring the officer's requests, terminating the encounter, or leaving the scene were not viable options." *Id*. What began

as a social contact in *Johnson* thus evolved into a seizure, implicating Johnson's rights under article I, section 7. *Id.* at 745.

The circumstances in *Johnson*, however, are distinguishable from this case. Primarily, Division One of this court described "[t]he sudden presence of two uniformed officers so soon after the vehicle had parked, the shining of flashlights into the vehicle," the officers' use of a ruse regarding whether the car truly belonged to another named person, and the physical impediment to terminating the interaction created by the officers' positioning. *Id.* at 744. While "the request for proof of Johnson's identity became the tipping point at which the weight of the circumstances transformed a simple encounter into a seizure," the officer's request was also considered in light of the totality of the other circumstances involved in the interaction. *Id.* at 745.

Here, unlike in *Johnson*, Rickerson parked his patrol car so that he did not block Sum from leaving. In addition, Rickerson was alone, he did not illuminate the interior of Sum's vehicle, he initially encountered Sum while checking on Sum's well-being, and he did not repeatedly question whether the car belonged to someone other than Sum.

Absent an additional display of authority, the fact that Rickerson explained that he requested Sum's identification because Sum and his passenger "were sitting in an area known for stolen vehicles" and Sum "did not appear to know to whom the vehicle he was sitting in belonged," does not alone transform the social contact into a seizure. CP at 87; *see Johnson*, 8 Wn. App. 2d at 745. Instead, Rickerson's conduct more closely mirrors those cases in which an officer does nothing more than request identification. Courts have repeatedly held that merely asking for identification is properly characterized as a social contact as opposed a seizure. See *Mote*, 129 Wn. App. at 282; *O'Neill*, 148 Wn.2d at 577; *Armenta*, 134 Wn.2d at 11;. Based on the totality of

circumstances present in this case, we conclude that Sum was not seized at the time that he provided the false name to Rickerson.

## CONCLUSION

We hold that Sum was not seized at the moment that he provided Rickerson with a false name and date of birth in response to Rickerson's request for identification. The trial court properly denied Sum's CrR 3.6 motion to suppress on this basis. We therefore affirm Sum's conviction for making a false or misleading statement to a public servant.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, J.

SUTTON, A.C.J.