# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56842-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SAMUEL A. SWEET, | |
| Appellant. | |

CHE, J. — Samuel Sweet appeals his convictions for one count of possession with intent to deliver heroin and one count of possession with intent to deliver methamphetamine and imposed fines and fees. Sweet argues that the trial court erred in denying his motion to suppress.

In January 2021, Detective James Bessman received information from a confidential informant that Sweet was selling narcotics out of a Mini Cooper at a local hotel. The following day, detectives discovered Sweet had an unconfirmed Department of Corrections (DOC) warrant and observed a Mini Cooper at the local hotel. After police stopped the vehicle and read Sweet his *Miranda*[1] warnings, officers retrieved two baggies of heroin and cash from Sweet's pants. Subsequently, a narcotic K9 dog alerted to Sweet's vehicle, and detectives obtained a search warrant for the vehicle. A search of the vehicle returned multiple baggies of methamphetamine,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

along with other evidence of drug dealing. Sweet moved to suppress the seized evidence. The trial court denied Sweet's motion and ultimately found Sweet guilty of one count of possession with intent to deliver heroin and one count of possession with intent to deliver methamphetamine and imposed fines and fees.

We hold that (1) substantial evidence does not support the trial court's findings of fact supporting its denial of Sweet's motion to suppress the evidence, (2) the trial court erred in concluding that the stop was constitutional, (3) the error was not harmless, and (4) we do not reach the issue of whether the crime victim penalty assessment should be stricken as it is moot. Consequently, we reverse the convictions and remand for dismissal with prejudice of Sweet's charges.

FACTS

In January 2021, Detective James Bessman received information from a confidential informant that Samuel Sweet was selling heroin out of a Mini Cooper at a local hotel in Kelso, Washington. The following day, Detectives Bessman and Hartley conducted surveillance in the local hotel parking lot. Bessman observed a Mini Cooper parked in the lot. After surveilling the vehicle for several minutes, the Mini Cooper started to leave the parking lot. Bessman "proceeded to do a . . . 'loose follow'" of the Mini Cooper in an unmarked vehicle. Rep. of Proc. (RP) at 23. Bessman had two deputies, in marked vehicles, stop the Mini Cooper. The marked police cars pulled in front of Sweet's vehicle with overhead lights, blocking it in, and police stopped Sweet's vehicle with guns drawn.

After stopping the Mini Cooper and reading Sweet his *Miranda* warnings, officers "retrieved a baggie from Sweet's right front [pants] pocket containing a brown tar substance."

2

Clerk's Papers (CP) at 17. Sweet admitted ownership of the baggie and identified its contents as

heroin. Officer's also retrieved $1,280 in U.S. currency, in varying denominations, from Sweet's

pants pocket. Officer's further obtained "a small black bag attached to [Sweet's] belt loop,"

containing "an empty . . . baggie as well as a baggie containing" heroin. CP at 17.

Subsequently, "Bessman requested a narcotic K9 free air sniff of [Sweet's] vehicle." CP at 19.

After the K9 dog alerted to Sweet's vehicle, Bessman requested a search warrant for the vehicle.

> In his complaint and affidavit for a search warrant, Bessman wrote, in relevant part:
>
> On 1/27/2021, I had credible information from confidential informants that Samuel A. Sweet . . . was selling/dealing heroin at the [hotel] . . . . I was further advised that Sweet was using a Mini Cooper to make deliveries of heroin. Records showed, Sweet had an unconfirmed DOC warrant for his arrest. Specialist Matua with DOC requested that we detain Sweet if we contact him.
>
> Det. Hartley and I were in the [hotel parking] lot conducting surveillance when we observed a Mini Cooper with OR plate . . . in a parking stall occupied. I believed this to be occupied by Sweet. After a few minutes the Mini Cooper left and headed to the front of the hotel. I was in contact with [deputies] . . . , and advised them of the vehicle leaving which I believed to be occupied by Sweet . . . [Deputies] activated their lights contacting the vehicle. Sweet was contacted in the driver seat and detained.

CP at 17. A subsequent search of Sweet's vehicle returned multiple baggies of

methamphetamine, along with other evidence of drug dealing. CP at 9.

Sweet moved "for an order suppressing any and all evidence obtained as a result of [his]

seizure . . . in violation of Article One, Section Seven of the Washington State Constitution." CP

at 13. In his memorandum of authorities supporting his motion to suppress, Sweet raised two

issues: (1) "Did Detective Bessman have reasonable suspicion to justify the initial detention of

the Mini Cooper," and (2) "Was the narcotics K9 sniff sufficient to constitute probable cause to

support a search warrant for the Mini Cooper?" CP at 23. In supporting his arguments, Sweet relied on case law that explicitly explored informant reliability.

At the suppression hearing, Detective Bessman testified that his "informant was a reliable informant" and that Bessman had worked with them in the past. RP at 22. Bessman described the informant as being in the area at the time of the surveillance. Bessman explained that he exchanged several phone calls and text messages with his informant during the investigation. The informant told Bessman that Sweet was driving the Mini Cooper as Bessman observed a Mini Cooper in the hotel parking lot. Bessman clarified that although the informant provided information concerning the make and model of the vehicle, Bessman did not receive a description of the Mini Cooper's color or license plate. Bessman confirmed that prior to stopping the Mini Cooper, neither he nor any other law enforcement officers, had "the ability to positively identify the driver." RP at 25-26. When asked whether he had looked up Sweet in any police databases, Bessman confirmed that he had and that "Sweet had an active DOC warrant for his arrest at that time." RP at 22.

Following the evidentiary hearing, the trial court entered a written ruling denying Sweet's motion to suppress. The trial court did not enter separate findings of fact and conclusions of law. Instead, the trial court entered a narrative finding:

> At the time Mr. Sweet was contacted in the parking lot of the [hotel] in Kelso, WA, the officers had knowledge of several things: the accusation from a 'credible' confidential informant that the defendant was selling drugs out of the [hotel] and was driving a Mini Cooper automobile, as well as confirmation of a Department of Corrections warrant for the arrest of Mr. Sweet. The officers appear to initially operate under the allegations of the confidential informant as to initial actions, but when Detective Bessman indicated in the search warrant, and testified, he stated he recognized whom he believed to be Mr. Sweet operating the Mini Cooper at the [hotel]. Based on that reasonable suspicion, law enforcement had the authority to contact Mr. Sweet under the Department of Corrections warrant alone. The

subsequent contact, disclosures made by Mr. Sweet, vehicle sweep done by the K-9 unit, and ultimately the search warrant are a result of what the Court finds to be a lawful stop. The search warrant is not ideal in its outline of probable cause, however does meet the standard based on what was provided. The Court is somewhat troubled by the general statement from a confidential information [sic] saying Mr. Sweet was 'selling/dealing heroin at the [hotel]', without any indication that these activities were observed, when they were observed, and why they had reason to know these things were happening. The Court ultimately does not find the stop of Mr. Sweet to be unlawful.

The search warrant, had it been granted before the stop, would most certainly be found insufficient. However, given the finding of a lawful stop, the information provided by Mr. Sweet, the direct observations of law enforcement, and the information contained within the search warrant, this Court finds the search warrant had the requisite probable cause for execution.

CP at 41-42.

Sweet filed a motion for reconsideration. In his motion for reconsideration, Sweet explicitly challenged the informant's reliability. Sweet argued that "all of the information for the stop came from a confidential informant;" however, "[t]here is no record, either in the search warrant affidavit or from testimony, as to what track record this informant has with law enforcement." CP at 51. Sweet emphasized that the record lacked information concerning "how many investigations [the informant] participated in, in what capacity they had provided information, [or] what track record of accuracy that information [sic] had." CP at 51. Sweet also challenged the trial court's mischaracterization of Bessman's ability to identify Sweet as the driver of the Mini Cooper. The State agreed that Bessman "did not personally observe [Sweet] in the vehicle." CP at 54.

The trial court denied Sweet's motion for reconsideration. In denying Sweet's motion to reconsider, the trial court adopted the State's argument that the "reliability of the informant was not raised at the initial hearing, and is a new issue brought in the motion to reconsider." CP at

56. The trial court also acknowledged "the mistake pointed out by the parties regarding the testimony of Detective Bessman and the belief he saw Mr. Sweet in the driver's seat of the Mini Cooper prior to the vehicle being pulled over." CP at 56.

Based on the parties' stipulated facts, the trial court found Sweet guilty of one count of possession with intent to deliver heroin and one count of possession with intent to deliver methamphetamine. The court imposed fines and fees. Sweet appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing the denial of a suppression motion, this court "determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is evidence sufficient "'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). This court reviews "conclusions of law from an order pertaining to the suppression of evidence de novo." *Id.*

Warrantless searches and seizures are per se unreasonable. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). Accordingly, "the State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule." *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). A brief investigatory seizure, otherwise known as a *Terry*[2] stop, is an exception to the warrant requirement that "requires a well-founded suspicion that the defendant engaged in criminal conduct." *Id.* at 62. In "reviewing the merits of an investigatory

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

stop, a court must evaluate the totality of circumstances presented to the investigating officer."

*Id*.

## II. CHALLENGED FINDINGS OF FACT & SUBSTANTIAL EVIDENCE

Sweet argues that the trial court's "crucial factual findings are not supported by substantial evidence." Br. of Appellant at 25. Sweet specifically challenges the trial court's findings that:

1. "Detective Bessman had 'confirmed' the validity of the DOC arrest warrant prior to the stop."

2. "Detective Bessman saw the person driving the Mini Cooper and recognized them as Mr. Sweet, and that the detective had related those 'facts' in his affidavit and testimony."

3. The "informant was 'a credible confidential informant.'"

Br. of Appellant at 25-27 (internal quotation marks omitted). We agree with Sweet.

A.    *DOC Warrant*

In its ruling on Sweet's motion to suppress, the trial court found that

At the time Mr. Sweet was contacted in the parking lot of the [hotel] in Kelso, WA, the officers had knowledge of several things: . . . [including] confirmation of a Department of Corrections warrant for the arrest of Mr. Sweet.

CP at 41.

Sweet argues that the trial court's finding is unsupported by substantial evidence because "detective [Bessman] specifically testified that he had *not* confirmed the warrant." Br. of Appellant at 27. The State contends that Bessman's testimony demonstrates that he "knew that Sweet had an active DOC warrant for his arrest." Br. of Resp't at 3. However, the State does not go so far as to agree that Bessman confirmed the warrant prior to the time of the felony stop or prior to the police searching Sweet or giving Sweet *Miranda* warnings.

Here, Bessman's affidavit and subsequent testimony do not substantially support a finding that Bessman confirmed that Sweet had an active DOC warrant for his arrest at the time of the initial stop or prior to the police searching Sweet or giving Sweet *Miranda* warnings. The record is unclear when Bessman confirmed Sweet's warrant, if ever. Bessman's search warrant affidavit specifically stated that "[r]ecords showed, Sweet had an *unconfirmed* DOC warrant for his arrest." CP at 17 (emphasis added). The search warrant contained a narrative of Sweet's arrest; therefore it had been prepared after Sweet's arrest. While Bessman testified to an active warrant at that time, Bessman was not asked when Bessman knew the warrant was active nor does his testimony reflect when Bessman may have received confirmation of an active DOC warrant. Lastly, while the warrant referenced a DOC Specialists' comment, the record is unclear whether that information was found when discovering the unconfirmed warrant or whether it was the result of a subsequent contact with the DOC Specialist and confirmation of the warrant.

Accordingly, substantial evidence does not support the trial court's finding that at the time officers stopped Sweet, they had "confirmation of a Department of Corrections warrant for" Sweet's arrest. CP at 41.

B. *Driver Identification*

In its ruling on Sweet's motion to suppress, the trial court found that

> The officers appear to initially operate under the allegations of the confidential informant as to initial actions, but when Detective Bessman indicated in the search warrant, and testified, he stated he recognized whom he believed to be Mr. Sweet operating the Mini Cooper at the [hotel].

CP at 41.

Sweet argues that "there was not substantial evidence in the record to support the [trial] court's findings that Detective Bessman saw the person driving the Mini Cooper and recognized

8

them as Mr. Sweet, and that the detective had related those 'facts' in his affidavit and testimony." Br. of Appellant at 25-26. The State agrees that "the trial court's initial ruling was based on a mistaken understanding of Detective Bessman's testimony." Br. of Resp't at 2. Thus, the State concedes that "Detective Bessman did not personally observe Sweet in the vehicle." Br. of Resp't at 4. We agree with Sweet and accept the State's concession.

Here, Bessman's search warrant affidavit makes clear that Bessman "observed a Mini Cooper . . . in a parking stall occupied" by who Bessman believed, but did not confirm, to be Sweet. CP at 17. During the suppression hearing, Bessman testified that although he "was informed [that] Sam Sweet was driving the Mini Cooper," neither Bessman, nor any other law enforcement officers, had "the ability to positively identify the driver . . . prior to the Mini Cooper being stopped." RP at 25.

In its response to Sweet's motion for reconsideration, the State agreed that Bessman did not testify "that he recognized a person that he believed to be the defendant operating the Mini Cooper at the [hotel]." CP at 54. In its ruling on Sweet's motion to reconsider, the trial court "acknowledge[d] the mistake pointed out by the parties regarding the testimony of Detective Bessman and the belief [that] he saw Mr. Sweet in the driver's seat of the Mini Cooper prior to the vehicle being pulled over." CP at 56.

In light of the State's concession, the trial court's acknowledgment of error, and Bessman's affidavit and testimony, substantial evidence does not support the trial court's finding that "Detective Bessman indicated in the search warrant, and testified, [that] . . . he recognized whom he believed to be Mr. Sweet operating the Mini Cooper at the [hotel]." CP at 41.

9

C.      *Informant Credibility*

In its ruling on Sweet's motion to suppress, the trial court found that

At the time Mr. Sweet was contacted in the parking lot of the [hotel] in Kelso, WA, the officers had knowledge of several things: the accusation from a 'credible' confidential informant that the defendant was selling drugs out of the [hotel] and was driving a Mini Cooper automobile[.]

CP at 41.

Sweet argues that there "was not substantial evidence in the record which would support a finding by the trial court that the informant was, in fact, credible" because there "was no evidence of any corroboration, or of the circumstances under which the informant got his or her information, or to otherwise prove the reliability of the informant." Br. of Appellant at 29-30.

The State argues that the issue concerning the informant's reliability "is not properly before this court as it was not properly raised in the trial court." Br. of Resp't at 4. The State highlights that "Sweet did not raise the issue of the informant's reliability in his original motion to suppress, bringing it up only in his motion for reconsideration." Br. of Resp't at 4. We agree with Sweet.

As an initial matter, we first address whether Sweet's challenge is properly before this court. Although Sweet did not explicitly raise arguments concerning the informant's reliability and credibility, such arguments were clearly implicit in Sweet's motion to suppress and subsequent oral argument. In Sweet's memorandum of authorities, he identifies two issues, including whether "Detective Bessman [had] reasonable suspicion to justify the initial detention of the Mini Cooper." CP at 23. Sweet argued that an investigatory stop requires "that the officer has a reasonable suspicion, grounded in specific and articulable facts, that the person has been or is about to be involved in a crime." CP at 25. Sweet further argued that "[i]t appears that the

10

specific information relied upon by Detective Bessman was supplied by a confidential

informa[nt]." CP 26. Sweet continues his argument by stating

> The officer's report merely states that the 'credible information' was supplied by a
> 'reliable source' that Sweet was selling drugs. Bessman did not identify the source
> of the information that 'Sweet was [previously] driving a Mini Cooper.' No
> objective, articulable facts were reported that would indicate that this particular
> Mini Cooper belonged to Sweet, such as the vehicle's license plate number,
> distinctive features, or even color.

CP at 27.

> At the suppression hearing, after questioning Detective Bessman, defense counsel argued
that
> [H]ere, basically, a named, unknown informant says: hey, Mr. Sweet is at this
> location, he's driving a Mini Cooper. Doesn't give a description of how long he's
> been there. Doesn't give a description of the actual Mini Cooper, no color, no
> license plate, no nothing. And based upon that, the officers just stop a Mini Cooper.
> It happened to be correct, but I think regardless, the information known to the
> officers at the time of the seizure of my client, frankly, would not lead to an
> articulable suspicion that the person driving the vehicle had a warrant.

RP at 30. Defense counsel further argued that "even if this was a named and known informant

that would be insufficient to say . . . a vehicle that this person may or may not be driving is in the

general area." RP at 33. Although Sweet's explicit argument focuses on the sufficiency of

Bessman's reasonable suspicion, such arguments necessarily implicate the source of his

suspicion and issues of informant reliability.

In Sweet's motion for reconsideration, defense counsel crystalized and expanded its

argument, explicitly addressing issues of informant reliability. In defense counsel's motion for

reconsideration, counsel argued that

> [A]ll of the information for the stop came from a confidential informant. There is
> no record, either in the search warrant affidavit or from testimony, as to what track
> record this informant has with law enforcement. No information as to how many
> investigations they had participated in, in what capacity they had provided

information, what track record of accuracy that information had. Only a representation that they were 'reliable.'

CP at 51. In light of the argument made in Sweet's motion to suppress below, Sweet's challenge is properly before this court.

Having determined that Sweet's challenge is properly before this court, we proceed to consider whether substantial evidence supports the trial court's finding concerning the informant's credibility.

Although "[w]arrantless seizures are presumed unreasonable," a brief investigatory stop, known as a *Terry* stop, is an exception to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015). A permissible *Terry* stop requires the State to "show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *Id.* (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)).

Where "an officer bases his or her suspicion on an informant's tip, the State must show that the tip bears some 'indicia of reliability' under the totality of the circumstances." *Z.U.E.*, 183 Wn.2d at 618.[3] Accordingly, there must either be "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in

---

[3] In *Z.U.E.* our Supreme Court "decline[d] to strictly apply the two-pronged *Aguilar/Spinelli* analysis" in determining "whether the information provided by a series of 911 calls provided the officers sufficient reliable information to justify stopping Z.U.E.'s car." *Z.U.E.*, 183 Wn.2d at 624. Instead, the court acknowledged that although the *Aguilar-Spinelli* test is relevant and useful to the reliability analysis, "a more flexible approach is needed and that each case requires an individualized review of the circumstances." *Z.U.E.*, 183 Wn.2d at 621, 624. The *Aguilar-Spinelli* test requires establishing both the informant's basis of knowledge and the informant's credibility. *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

a reliable fashion." *Z.U.E.*, 183 Wn.2d at 618; *State v. Lesnick*, 84 Wn.2d 940, 944, 530 P.2d 243 (1975)).

Here, Bessman's affidavit for a search warrant and limited testimony at the suppression hearing do not provide sufficient evidence concerning the confidential informant's reliability. In his complaint and affidavit for a search warrant, Bessman reported only that he "had credible information from confidential informants" that Sweet was selling heroin at the hotel and that Bessman was "advised that Sweet was using a Mini Cooper to make deliveries." CP at 17. Beyond these conclusory statements that the information and informant were credible, nothing in Bessman's affidavit demonstrates the confidential informant's veracity or basis of knowledge.

At the suppression hearing, Bessman's testimony minimally expanded on his affidavit. Bessman explained that the "informant [was] in the area at the same time" that Bessman was conducting surveillance at the hotel. RP at 22. Bessman further explained that he communicated with the informant several times, by call and text message, over the course of the investigation. Bessman's testimony does not point to circumstances that would establish the confidential informant's reliability. Furthermore, beyond confirming the presence of a Mini Cooper at the hotel, Bessman did not make a corroborating observation of criminal activity. In its ruling, the trial court expressly noted that it

> is somewhat troubled by the general statement from a confidential information [sic] saying Mr. Sweet was 'selling/dealing heroin at the [hotel]', without any indication that these activities were observed, when they were observed, and why they had reason to know these things were happening."

CP at 42.

The record lacks any evidence of additional circumstances to establish the informant's reliability. Further, it does not establish corroborating observations by the officers that showed

either the presence of criminal activity or that the confidential informant's information was obtained in a reliable fashion.

Accordingly, substantial evidence does not support the trial court's finding characterizing the confidential informant as credible.

### III. ARTICLE I, SECTION 7

Sweet argues that "[w]ithout the erroneously found 'facts,' the lower court's conclusions of law upholding the stop as constitutional under Article 1, § 7, do not withstand review." Br. of Appellant at 33. Sweet specifically challenges the "lower court's conclusions that the police had 'reasonable suspicion' to stop the car, that the stop was 'lawful' and that [the search] was not 'unlawful.'" Br. of Appellant at 32-33. We agree.

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Providing greater protection of a person's privacy rights, Article 1, § 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." *State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999). Where a police officer disturbs an individual's private affairs, the inquiry becomes "simply whether the officer had the requisite 'authority of law.'" *State v. Betancourth*, 190 Wn.2d 357, 367, 413 P.3d 566 (2018) (quoting *State v. Afana*, 169 Wn.2d 169, 180, 233 P.3d 879 (2010)).

In *State v. Sinclair*, police saw a large television in the back compartment of a green taxi cab. 11 Wn. App. 523, 524, 523 P.2d 1209 (1974). The area was known as a high crime burglary area and televisions were "very hot items for burglaries". *Id.* at 524-525. Also known to police was "that green taxicabs were being used to transport goods obtained [in] burglaries."

*Id.* at 525. Police followed the cab until it stopped and the passenger exited. *Id.* One officer

recognized the passenger, Sinclair, from prior direct contacts for robbery, and also based on

other police officer investigations for burglaries and larcenies. *Id.* The officer also believed that

Sinclair may have had a traffic warrant outstanding. *Id.* The officer told Sinclair to "wait a

minute" and put Sinclair into the police car for questioning. *Id.* The court stated:

> The foregoing principles support the action of the police in stopping, detaining and questioning defendant, and making a police headquarters check on the information obtained, all before probable cause to arrest existed. It should be emphasized, however, that *the 'well-founded suspicion' relied upon in this case did not arise until the defendant was recognized as a person whom the officers had reasonable grounds to suspect had a traffic warrant outstanding against him. They did not stop the cab; they merely followed it until it stopped. They then recognized defendant.*

*Sinclair*, 11 Wn. App. at 530-31 (emphasis added).

Article 1, § 7 "protects 'those privacy interests which citizens of this state have held, and

should be entitled to hold, safe from governmental trespass absent a warrant.'" *State v. Rankin*,

151 Wn.2d 689, 695, 92 P.3d 202 (2004) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688

P.2d 151 (1984)). Accordingly, a warrantless search and seizure is per se unreasonable. *Ladson*,

138 Wn.2d at 349. However, as discussed above, a *Terry* stop provides an exception to the

warrant requirement. *Acrey*, 148 Wn.2d at 746. A *Terry* stop "is permissible whenever the

police officer has a reasonable suspicion, grounded in specific and articulable facts, that the

person stopped has been or is about to be involved in a crime." *Id.* at 747. The State carries the

burden to prove the applicability of a warrant exception. *Id.* at 746.

Reflecting the breadth of protection guaranteed by Article I, § 7, Washington's

exclusionary rule "is 'nearly categorical.'" *State v. Afana*, 169 Wn.2d 169, 180, 233 P.3d 879

(2010) (quoting *State v. Winterstein*, 167 Wn.2d 620, 636, 220 P.3d 1226 (2009)). Accordingly,

"we have explicitly declined to adopt a good faith or reasonableness exception to the exclusionary rule." *Betancourth*, 190 Wn.2d at 367. Thus, where "an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Ladson*, 138 Wn.2d at 359.

Here, as discussed above, after the trial court's findings that are not supported by substantial evidence are excised, the remaining findings do not support the trial court's conclusion that the stop of Sweet was lawful. The trial court considered two bases in determining the legality of the stop: (1) information provided by the confidential informant and (2) Bessman's identification of Sweet as the driver coupled with knowledge of the outstanding warrant. First, the trial court noted that the "officers appear to initially operate under the allegations of the confidential informant as to initial actions." CP at 41. As discussed above, Bessman's testimony and affidavit were insufficient to establish the informant as credible or the information reliable.

Next, the trial court explained that "when Detective Bessman indicated in the search warrant, and testified, he stated he recognized whom he believed to be Mr. Sweet operating the Mini Cooper." CP at 41. The trial court found that "[b]ased on that reasonable suspicion, law enforcement had the authority to contact Mr. Sweet under the Department of Corrections warrant alone." CP at 41. But Bessman did not confirm the warrant for Sweet's arrest nor did he identify Sweet as the driver of the Mini Cooper prior to stopping the vehicle. Furthermore, Bessman testified he initially surveilled the Mini Cooper, however, Bessman's testimony lacked any corroboration that during his surveillance he observed that Sweet had been or would be involved in a crime.

16

In the absence of a credible informant, confirmed warrant, identification of Sweet as the driver of the Mini Cooper, or other corroborative observations evidencing criminal activity, the record fails to support the trial court's conclusion that the stop was lawful.

## IV. HARMLESS ERROR

Sweet argues that the State cannot prove that the failure to suppress constituted constitutional harmless error. Br. of Appellant at 36. We agree that the error was not harmless.

Where a conviction is based on inadmissible evidence, we must consider whether such a constitutional error may be considered harmless. *State v. Thompson*, 151 Wn.2d 793, 808, 92 P.3d 228 (2004) (explaining that an error is harmless where "we are convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result despite the error"). Employing the "'overwhelming untainted evidence' test. . . ., 'we consider the untainted evidence *admitted at trial* to determine if it is so overwhelming that it necessarily leads to a finding of guilt.'" *Id.* (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)).

Here, all of the evidence supporting Sweet's convictions were obtained as a result of the unlawful stop. Without this evidence, we are not convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result. Accordingly, the trial court's denial of the motion to suppress the evidence was not a harmless error, and Sweet's convictions must be reversed.

## V. VICTIM PENALTY ASSESSMENT

Sweet argues that the victim penalty assessment should be stricken from his judgment and sentence. If a court cannot provide effective relief, then the case is basically moot. *State v.*

17

*Cruz*, 189 Wn.2d 588, 597, 404 P.3d.70 (2017). Because we reverse Sweet's convictions and remand for dismissal with prejudice, this issue is moot and we decline to address it.

CONCLUSION

We reverse the convictions and remand for dismissal with prejudice of Sweet's charges.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Price, J.